2004-NMSC-001

82 P.3d 939

**STATE of New Mexico, Plaintiff–
Petitioner,**

v.

**Ignacio RIVERA, Defendant–Respondent.**

No. 27,952.

Supreme Court of New Mexico.

Dec. 2, 2003.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, William A. O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

MINZNER, Justice.

{1} The State petitioned this Court to review an opinion of the Court of Appeals, which held that the district court lacked jurisdiction to act upon the State's petition to revoke Defendant's probation while his appeal from the underlying conviction was pending. *See State v. Rivera*, 2003–NMCA–059, 133 N.M. 571, 66 P.3d 344. We granted certiorari pursuant to NMSA 1978, § 34–5–14(B) (1972). *See also* Rule 12–502 NMRA 2003. We now hold that the filing of a notice of appeal does not preclude the district court from holding a probation revocation hearing or revoking a defendant's probation. Since the district court did not lack jurisdiction to act upon the State's petition, we reverse the Court of Appeals.

### I

{2} Defendant was convicted by a jury of various crimes, including aggravated battery and aggravated assault against a household member. On August 15, 2000, Defendant was sentenced to six years in prison less one day; however, the district court suspended the sentence and placed Defendant on probation for five years. On September 13, Defendant filed a timely notice to appeal his conviction. Defendant did not request an appeal bond, the district court did not set an appeal bond, and Defendant began serving his probationary sentence.

{3} While his appeal was pending, on September 30, Defendant was arrested on several charges stemming from a DWI investigation. This arrest violated the probation order that was filed by the district court on October 3. On December 19, the State petitioned the district court to revoke Defendant's probation based on these violations. The district court held a hearing on March 5, 2001, at which Defendant admitted

to violating the terms of his probation. The district court accepted his admission and announced it would set sentencing on the violations at a later date.

{4} In the meantime, Defendant's appeal to the Court of Appeals had been pending. On March 29, the Court of Appeals affirmed Defendant's conviction. Defendant filed a motion to dismiss the State's petition to revoke his probation on the ground that the district court lacked jurisdiction to consider the petition while his case was on appeal. On June 4, the district court denied Defendant's motion to dismiss the State's petition, and, on June 26, the court revoked Defendant's probation based on his admission at the March 5 hearing. The court again sentenced Defendant to probation.

### II

{5} The specific issue presented in this case is one of first impression. We must determine whether the district court could act upon the State's petition to revoke probation while Defendant's appeal was pending. Resolution of this issue requires inquiry into the meaning and legislative intent of NMSA 1978, § 31–11–1(A) (1988), which provides that "[a]ll appeals and writs of error in criminal cases have the effect of a stay of execution of the sentence of the district court until the decision of the supreme court or court of appeals."

{6} The Court of Appeals held that Section 31–11–1(A) indicates a legislative intent that a defendant's sentence of probation be stayed pending appeal and thus the district court lacked jurisdiction to act on the State's petition to revoke probation. *Rivera*, 2003–NMCA–059, ¶¶ 9, 11, 133 N.M. 571, 66 P.3d 344. The Court reasoned that Section 31–11–1 codified the general common law rule that a trial court is divested of jurisdiction during the pendency of an appeal. *Id.* ¶¶ 10–11. The Court found support for its analysis in *State v. Ramirez*, 76 N.M. 72, 412 P.2d 246 (1966) and *State v. Cordova*, 100 N.M. 643, 674 P.2d 533 (Ct.App.1983). In *Ramirez*, this Court held that a defendant may not waive his or her right to an appeal bond in

order to receive credit against the defendant's sentence for his or her time of confinement during the appeal. 76 N.M. at 76, 412 P.2d at 249. In *Cordova*, the Court of Appeals stated that the defendant was "under no legal duty except moral, perhaps, to make any restitution during the pendency of his or her first appeal." 100 N.M. at 648, 674 P.2d at 538. The Court of Appeals concluded that the only proper mechanism the district court had to control Defendant's behavior while his appeal was pending was an appeal bond with conditions of release. *Rivera*, 2003–NMCA–059, ¶ 20, 133 N.M. 571, 66 P.3d 344.

{7} Judge Castillo dissented. She distinguished both *Ramirez* and *Cordova* on their facts, *id.* ¶¶ 28–29, 32–33 (Castillo, J., dissenting), and concluded that a trial court is not divested of jurisdiction to hear matters unrelated to the issues on appeal, *id.* ¶ 36 (Castillo, J., dissenting). We agree with Judge Castillo that neither opinion is particularly helpful in resolving this appeal.

{8} Since 1966, the law regarding credit for time served has changed. *See* NMSA 1978, § 31–20–11 (1977) (granting credit for time served for period spent in confinement during appellate review). Thus, *Ramirez* has been modified by statute. *Cordova* is also distinguishable. It is unclear whether an appeal bond was executed by the defendant in that case. If we assume that an appeal bond was in fact executed in *Cordova*, that case is not inconsistent with this Court's holding today. The posting of an appeal bond in *Cordova* would have stayed the defendant's probation, thus giving him no legal duty to make restitution while his appeal was pending. *See infra* ¶ 26. Additionally, unlike other conditions of probation, "requiring victim restitution is declarative of [a] public policy to make whole the victim of the crime to the extent possible." *State v. Lack*, 98 N.M. 500, 505, 650 P.2d 22, 27 (Ct.App.1982); *see also* NMSA 1978, § 31–17–1 (1993) (allowing the court to order a defendant to make full or partial payment to the victim of the actual damages that would be recoverable in a civil action). Staying execution of victim restitution will generally not defeat the Legislature's goal of prompt and effective defendant rehabilitation in a way that staying

the entire probationary sentence may. *See infra* ¶ 24. For the foregoing reasons, we believe this case turns on the proper construction of Section 31–11–1(A), which is an issue of first impression.

## III

{9} "Interpretation of a statute is a matter of law, which we review de novo." *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). Likewise, "[t]he determination of whether the language of a statute is ambiguous is a question of law," which we also review de novo. *Leo v. Cornucopia Rest.*, 118 N.M. 354, 357, 881 P.2d 714, 717 (Ct.App.1994).

### A

{10} " 'The starting point in every case involving the construction of a statute is an examination of the language utilized by [the Legislature]' in drafting the pertinent statutory provisions." *State v. Johnson*, 2001–NMSC–001, ¶ 6, 130 N.M. 6, 15 P.3d 1233 (quoting *State v. Wood*, 117 N.M. 682, 685, 875 P.2d 1113, 1116 (Ct.App.1994)) (alteration in original). Under the plain meaning rule of statutory construction, "[w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990).

{11} However, applying the plain meaning rule is not always as simple as the statement of that rule may imply. As Chief Justice Montgomery eloquently cautioned this Court

> [The plain meaning rule's] beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., non-frivolous) differences of opinion concerning the statute's meaning. In such a case, it can rarely be said that the legislation is indeed free from all ambiguity and is crystal clear in its meaning. While ... one part of the statute may appear absolutely clear and certain to the point of mathematical precision, lurking in another part of the enactment,

or even in the same section, or in the history and background of the legislation, or in an apparent conflict between the statutory wording and the overall legislative intent, there may be one or more provisions giving rise to genuine uncertainty as to what the legislature was trying to accomplish. In such a case, it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute.

*State ex rel. Helman v. Gallegos,* 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994).

{12} Application of the plain meaning rule often does not end the analysis when construing a statute. Rather, the rule is a tool used by courts during the course of seeking and effectuating the legislative intent underlying the statute. *See id.* ("[W]e believe it to be the high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose...."); *Sims v. Sims,* 1996–NMSC–078, ¶ 21, 122 N.M. 618, 930 P.2d 153 (noting that the plain meaning rule "is only a primary source of understanding, not conclusive, and it must yield on occasion to an intention otherwise discerned in terms of equity, legislative history, or other sources") (quoted authority and quotation marks omitted). This recognition of the plain meaning rule as a tool of statutory construction is not intended to minimize its doctrinal importance. Looking simply to the plain meaning of the language employed by the Legislature will resolve many issues of statutory construction. *See, e.g., Cooper v. Chevron U.S.A., Inc.,* 2002–NMSC–020, ¶ 16, 132 N.M. 382, 49 P.3d 61 (holding that the plain meaning of "resides" controls when interpreting NMSA 1978, § 38–3–1(F) (1988)).

■ {13} Nevertheless, we have not relied upon the literal meaning of a statute when such an application would be absurd, unreasonable, or otherwise inappropriate. *See Helman,* 117 N.M. at 351–52, 871 P.2d at 1357–58. In performing our task of statutory interpretation, not only do we look to the language of the statute at hand, we also consider the history and background of the statute. *State ex rel. Klineline v. Black-*

*hurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). Furthermore, we closely examine the overall structure of the statute we are interpreting, *see State v. Calvert,* 2003–NMCA–028, ¶ 15, 133 N.M. 281, 62 P.3d 372, *cert. denied,* 133 N.M. 413, 63 P.3d 516 (2003) as well as the particular statute's function within a comprehensive legislative scheme, *see Sims,* 1996–NMSC–078, ¶ 21, 122 N.M. 618, 930 P.2d 153 ("When attempting to unravel a statutory meaning we begin with the presumption that the statutory scheme is comprehensive."). In other words, "a statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:05, at 165 (6th ed., rev.2000). In considering the statute's function in relation to related statutes passed by the Legislature, "[w]henever possible ... we must read different legislative enactments as harmonious instead of as contradicting one another." *State v. Muniz,* 2003–NMSC–021, ¶ 14, 134 N.M. 152, 74 P.3d 86 (quotation marks and quoted authority omitted).

■ {14} Finally, while we would be exceeding the bounds of our role as an appellate court by second-guessing the clear policy of the Legislature, *see State ex rel. State Engineer v. Lewis,* 1996–NMCA–019, 121 N.M. 323, 327, 910 P.2d 957, 961, when the statute is ambiguous, we may nonetheless consider the policy implications of the various constructions of the statute. *See Ortiz v. BTU Block & Concrete Co.,* 1996–NMCA–097, ¶ 13, 122 N.M. 381, 925 P.2d 1. We must now apply these principles of statutory construction to interpret the legislative purpose and meaning of Section 31–11–1(A), which provides, "[a]ll appeals and writs of error in criminal cases have the effect of a stay of execution of the sentence of the district court until the decision of the supreme court or court of appeals."

**B**

{15} Defendant has argued that under the plain meaning of Section 31–11–1(A) the trial

court lacked jurisdiction to revoke or otherwise modify his probation while his conviction was on appeal. Notwithstanding the force of the language on which Defendant relies, a closer examination of the original language and internal structure of Section 31–11–1, its history and background, its function within the comprehensive statutory scheme, and general policy considerations compel a different construction.

{16} We do look first to the statutory text in construing Section 31–11–1; however, we look not only to what is explicitly stated by the language of Section 31–11–1 but we also take special notice of what has been omitted from the purview of the statute. *See* 2A Singer, *supra,* § 47:23, at 304–07 ("[W]here a form of conduct, the manner of its performance and operation, and the persons . . . to which it refers are designated, there is an inference that all omissions should be understood as exclusions.") (footnotes omitted). Nowhere within the language of Section 31–11–1 has the Legislature expressly prohibited a probationer's sentence from running during the pendency of his or her appeal. This omission is particularly telling in light of the specificity with which the Legislature addresses those defendants who have been given a sentence of death or any term of imprisonment. *See* § 31–11–1(B)–(C). While the apparently broad language of Section 31–11–1(A) would seem to encompass sentences of probation, the absence of any reference to such sentences in later sections leads us to suspect that the statute was directed at sentences other than probation. That suspicion requires a review and analysis of the history of Section 31–11–1.

{17} The original language of Section 31–11–1 was drafted in 1907. This language read in whole:

> All appeals in criminal cases shall have the effect of a stay of execution of the sentence of the court until the decision of the supreme court upon said appeal. And whenever the sentence of the district court shall be that of death or imprisonment for life, the party convicted shall remain in close confinement until the decision of the supreme court shall be pronounced upon appeal; and *in*

> *all other cases of appeal the party taking the appeal shall be entitled to give bail* by filing a bond in the sum and with conditions to be fixed by the district court sufficient to secure the due execution of the sentence of the court in case the judgment of the court be affirmed by the supreme court.

1907 N.M. Laws, ch. 57, § 58 (emphasis added). Even a cursory glance of the original statute reveals that the first sentence of the 1907 enactment is substantially the same as Section 31–11–1(A). This clause has only been amended twice since it was drafted over ninety years ago, and neither of these amendments materially altered the meaning of the clause. *See* 1927 N.M. Laws, ch. 93, § 10 (incorporating "writs of error" within the statute); *see* 1966 N.M. Laws, ch. 28, § 59 (dividing the statute into subsections, removing the word "shall" and adding "court of appeals"). We can infer from these minor amendments that the original meaning of the language used by the Legislature for the most part still controls. We believe the Legislature's original intent was to provide certain criminal defendants with a right to bail during the pendency of their appeal, which those defendants were not constitutionally guaranteed and which was not available under the common law as a matter of right. *See* Annotation, *Bail Pending Appeal from Conviction,* 45 A.L.R. 458, 459 (1926) (noting that bail pending an appeal from conviction is generally a creature of statute). The Legislature also may have intended to avoid the traditional rule that a criminal appeal was moot once the defendant's sentence was fully satisfied. *See* 5 Wayne R. LaFave et al., *Criminal Procedure* § 27.5(a), at 910 (2d ed.1999).

{18} We conclude the language used by the 1907 Legislature and the subsequent history of Section 31–11–1 supports a different construction than the one given the statute by the Court of Appeals. A strictly literal construction of the first sentence of the 1907 enactment would render as a nullity the subsequent provision providing for the right to bail in all cases other than those with a sentence of death or life imprisonment. If the execution of a defendant's sentence was

automatically stayed once he or she appealed, then the defendant would have had no need for a statutory right to post an appeal bond. We are generally unwilling to construe one provision of a statute in a manner that would make other provisions null or superfluous. *See Katz v. N.M. Dep't of Human Servs.*, 95 N.M. 530, 534, 624 P.2d 39, 43 (1981) ("A statute must be construed so that no part of the statute is rendered surplusage or superfluous."); *Sec. Trust v. Smith*, 93 N.M. 35, 38, 596 P.2d 248, 251 (1979) ("[A] statute should not be construed in such a way as to nullify certain of its provisions.").

{19} Furthermore, trial courts today have more sentencing options than they did at the time of the 1907 enactment. By its plain meaning, the 1907 enactment appears to apply only to three types of sentences—death, life imprisonment, and all other terms of imprisonment. However, sentencing, and in particular the system of probation, has changed dramatically in New Mexico since the 1907 enactment. *See* Probation and Parole Act, 1963 N.M. Laws, ch. 301, §§ 1–21 (codified as amended at NMSA 1978, §§ 31-21-3 to –19); *see also* 1963 N.M. Laws, ch. 303, § 29–17 (codified as amended at NMSA 1978, § 31–20–5) (providing authority for the court to place defendants receiving suspended or deferred sentences on probation). Thus, the legislators in 1907 who passed the original act could not have contemplated the applicability of that act to this state's current sentencing scheme that emphasizes constructive rehabilitation. *See* NMSA 1978, § 31–21–4 (1963). We have delineated our task as follows:

> As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final.

*Helman*, 117 N.M. at 354, 871 P.2d at 1360 (quoting *D'Avignon v. Graham*, 113 N.M. 129, 131, 823 P.2d 929, 931 (Ct.App.1991)). In short then, our task is to determine how the original drafters of Section 31–11–1(A) would have applied the act to sentences of

probation. Of course, we ought to consider subsequent acts by the Legislature, as well as the current sentencing scheme into which this statutory provision has been compiled.

{20} We therefore review Section 31–11–1(A) in light of current sentencing procedures. Under the current sentencing scheme, upon the entry of a judgment of conviction, the sentencing court has four options: (1) sentence the defendant and commit the defendant to jail or prison, NMSA 1978, § 31–20–2 (1993); (2) "enter an order deferring the imposition of sentence," NMSA 1978, § 31–20–3(A) (1985); (3) "sentence the defendant and enter an order suspending in whole or in part the execution of the sentence," Section 31–20–3(B) (1985), or (4) commit the defendant to a period of diagnosis prior to sentencing, NMSA 1978, Section 31–20–3(C) (1985). *State v. Clah*, 1997–NMCA–091, ¶ 19, 124 N.M. 6, 946 P.2d 210. If the sentencing court elects to either defer or suspend the defendant's sentence, the trial court has the authority to place the defendant on probation. NMSA 1978, Section 31–20–5 (1985). Trial courts routinely act to initially place defendants on probation in lieu of imprisonment based on the assumption that "the [defendant] can be rehabilitated without serving that portion of the sentence which is suspended." *State v. Sinyard*, 100 N.M. 694, 696, 675 P.2d 426, 428 (Ct.App. 1983).

{21} The probation statutes themselves are structured in such a manner to give the sentencing court the broad power to ensure that the goal of rehabilitation is indeed being achieved. *See* § 31–21–4. Under NMSA 1978, § 31–21–15 (1989), the court has the power to hold a hearing, and upon a showing of a violation by the defendant of his or her conditions of release the court may revoke the defendant's probation. Our Court of Appeals has held on more than one occasion that this power of revocation is so broad as to allow the court to revoke a defendant's probation based on a defendant's misbehavior occurring *before* the commencement of probation. *State v. Martinez*, 108 N.M. 604, 775 P.2d 1321 (Ct.App.1989); *State v. Padilla*, 106 N.M. 420, 744 P.2d 548 (Ct.App.1987). In *Padilla*, the court stated that "[t]he sen-

tencing court retains jurisdiction to revoke a suspended sentence for good cause shown at any time subsequent to the entry of judgment and prior to the expiration of the sentence." 106 N.M. at 422, 744 P.2d at 550. Thus, we view the probation provisions of our state's criminal code, especially Sections 31–20–5 and 31–21–15, as indicative of the Legislature's intent to give trial courts broad discretion to sentence defendants to probationary terms and strictly monitor their compliance with an eye toward the goal of prompt and effective rehabilitation. A literal reading of Section 31–11–1(A) would seriously undermine this goal when a defendant seeks to appeal his or her conviction. *Cf. State v. Peterson*, 116 Or.App. 418, 841 P.2d 666, 667 (1992) (holding that state probation statutes reflect a legislative policy that trial judges have "maximum flexibility" to oversee probation that would be contravened by divesting those courts of jurisdiction during an appeal).

{22} Furthermore, our interpretation of Section 31–11–1(A) should be consistent with the procedures and purposes of the appeal bond. The majority opinion of the Court of Appeals in this case reasoned that the purpose of the appeal bond is to assure the defendant's appearance at subsequent proceedings. *Rivera*, 2003–NMCA–059, ¶ 19, 133 N.M. 571, 66 P.3d 344. We would add that the defendant's appearance is necessary to ensure that he or she will "'*submit to the punishment* to be imposed by the court.' " *State v. Cotton Belt Ins. Co.*, 97 N.M. 152, 154, 637 P.2d 834, 836 (1981) (quoting *Ex parte Parks*, 24 N.M. 491, 493, 174 P. 206, 207 (1918)) (emphasis added in original). Clearly, if a defendant remains on probation during the pendency of his or her appeal, an appeal bond becomes unnecessary since the defendant is *already* submitting to the punishment that an appeal bond would be fashioned to prevent the defendant from attempting to evade. Thus, one of the primary purposes of Section 31–11–1 as a whole-preventing the defendant from avoiding the consequences of his or her conviction and sentence-is inapplicable once the defendant is placed on probation.

{23} The State urges us to apply the common law rule that "a district court does not lose 'jurisdiction to take further action when the action *will not affect the judgment on appeal* and when, instead, the further action enables the trial court to carry out or enforce the judgment.' " *Gonzales v. Surgidev Corp.*, 120 N.M. 151, 156, 899 P.2d 594, 599 (1995) (quoting *Kelly Inn No. 102 v. Kapnison*, 113 N.M. 231, 241, 824 P.2d 1033, 1043 (1992)). Because the Legislature has addressed the issue, we hesitate to rely on these cases. However, in her dissenting opinion in this case, *Rivera*, 2003–NMCA–059, ¶ 23, 133 N.M. 571, 66 P.3d 344, Judge Castillo was correct in noting that the common law rule, as stated in *Gonzales* and *Kelly Inn*, supports a "more flexible pragmatic approach" than that which would be achieved by an unduly formalistic interpretation of Section 31–11–1(A). While those civil cases are not controlling in this case, they do shed some light on the Legislature's intent. *See* 2B Singer, *supra*, § 50:01, at 137 ("Where the language of the statute is subject to reasonable doubt, reference to common-law principles may provide a valuable clue as to whether a particular situation is controlled by the statute."). Specifically, we do not believe that during the pendency of an appeal the Legislature would have intended to so strictly circumscribe the trial court's power to act in criminal cases, while allowing the same court to act on all sorts of collateral matters in civil cases.

{24} Finally, we see no practical policy justification for preventing a defendant's probationary sentence from running during the pendency of his appeal. The primary goal of probation, which is defendant rehabilitation, may be defeated by delaying the commencement of a defendant's probationary sentence pending appeal. "In a situation where the appeal is unsuccessful, the defendant [may] start under probation supervision after so long a time that the conditions of probation imposed at the time of initial sentencing may no longer appropriately relate either to the defendant's need for rehabilitation or to the community's need for protection." Fed. R.Crim.P. 38 advisory committee's note "(1972 amendments"). Therefore, under federal law and a number of states' statutes, a

defendant's probationary sentence is *not* automatically stayed while his appeal is pending. *See, e.g.,* Fed.R.Crim.P. 38(d) ("If the defendant appeals, the court *may* stay a sentence of probation." (emphasis added)); Cal.Penal Code § 1243 (West Supp.2003) ("An appeal ... does not stay the execution of the judgment or order granting probation ... unless the trial or appellate court shall so order."); Nev.Rev.Stat. 177.125 (2002) ("An order placing the defendant on probation may be stayed if an appeal is taken.").

{25} Defendants may prefer to begin serving their probationary sentences during the pendency of their appeal for at least one of two reasons. First, many defendants placed on probation will lack the funds to post an appeal bond. Requiring such defendants to choose between posting an appeal bond they have difficulty affording or deciding against appealing would place those defendants in an untenable position. That position is likely to have a chilling effect on the exercise of their constitutional right to an appeal as provided for by Article VI, Section 2 of the New Mexico Constitution. Second, many defendants may opt to remain on probation during the pendency of their appeal in order to accrue credit for time served. *See* § 31–21–15(B) (requiring credit to be given for time served on probation if a defendant's probation is revoked); *see also* NMSA 1978, § 31–20–11 (1967) (granting credit for time served for period spent in confinement during appellate review). This is especially true when the typical alternative is an appeal bond with conditions of release that may be as onerous as the comparable conditions of probation, yet no credit will be received for that time if the conviction is affirmed. On the other hand, even Defendant's attorney admitted at oral argument that there is no persuasive policy rationale in favor of a literal reading of Section 31–11–1(A). While the Court of Appeals points out the danger of a defendant partially or wholly serving a potentially undeserved sentence while his case is on appeal, *see Rivera,* 2003–NMCA–059, ¶ 11, 133 N.M. 571, 66 P.3d 344, this danger is at least mitigated (if not eliminated) by allowing that defendant to seek an appeal bond rather than remain on probation during his or her appeal. *Cf. State v. Formaro,* 638 N.W.2d 720,

727 (Iowa 2002) (stating that the purpose of an appeal bond is "to suspend the execution of the judgment and maintain the status quo pending appellate review").

{26} We conclude that the Legislature intended Section 31–11–1 to function as an appellate bail bond statute. Under this construction, defendants are given a qualified opportunity for release pending appeal. *See* § 31–11–1(C). As a condition of release, the district court may order the defendant to post an appeal bond. *See* Rule 12–205 NMRA 2003 ("Upon motion, the district court shall initially set conditions of release pending appeal."); Rule 5–402(C) NMRA 2003 (granting the district court the power to set conditions of release pending appeal, including requiring the defendant to post bond). It is only when bond has been posted and accepted by the trial court that the defendant's sentence is stayed. *Cf.* NMSA 1978, § 39–3–22 (1966) (providing for supersedeas in civil cases after filing notice of appeal); *Devlin v. State ex rel. N.M. State Police Dep't,* 108 N.M. 72, 74, 766 P.2d 916, 918 (1988) (noting that Section 39–3–22 permits the district court to stay the execution of judgment once an appeal bond has been posted by the appellant). Under this construction, Defendant's sentence of probation was not stayed since he failed to post an appeal bond.

**IV**

{27} We hold that the Court of Appeals erred in holding that the district court lacked jurisdiction to act upon the State's petition to revoke Defendant's probation while his conviction was being appealed. Thus, we reverse the Court of Appeals and remand to the district court for proceedings consistent with this opinion.

{28} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PATRICIO M. SERNA, RICHARD C. BOSSON and EDWARD L. CHÁVEZ, Justices.