# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 25, 2017

**NO. 35,194**

**STATE OF NEW MEXICO**,

     Plaintiff-Appellant,

v.

**KAREN SIQUEIROS-VALENZUELA**,

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellant

Ruiz De La Torre Law Firm
Carlos Ruiz de la Torre
Albuquerque, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

{1}     The State of New Mexico appeals from an order of the district court suppressing evidence discovered following a traffic stop based on a violation of NMSA 1978, Section 66-7-317(A) (1978) (failure to maintain a lane). We conclude that the district court was correct in its determination. The traffic stop was not supported by reasonable suspicion, and the officer who subsequently discovered the evidence of criminal activity did so only after he stopped Defendant in violation of the Fourth Amendment to the United States Constitution. Accordingly, we affirm.

**BACKGROUND**

{2}     On March 20, 2013, at approximately 7:00 p.m., Officer Joseph Garcia of the New Mexico State Police was driving eastbound on Interstate 40 near Grants, New Mexico when he observed the car driven by Defendant make a legal lane change from the right lane into the left lane of this multi-lane interstate highway. As Defendant attempted to pass two semi-trucks that were in the right lane, her vehicle's left tires touched the yellow shoulder line of the left passing lane. This incident was recorded on the dash cam video of Officer Garcia's police vehicle. Once Defendant passed the semi-trucks, she then made a legal lane change back into the right lane. Other than Officer Garcia's observation of Defendant's movement in relation to the shoulder line, he "did not observe any other driving violations, erratic driving, or weaving of the vehicle within its own lane[.]" However, based on his perception that Defendant

violated Section 66-7-317(A), Officer Garcia pulled Defendant over. Officer Garcia testified at the suppression hearing that "he regularly pulls over drivers for . . . a single touching [or crossing] of a lane line."

{3}    Although not of particular relevance to the issue on appeal, given the district court's suppression solely on the basis of the traffic stop, we provide the following facts for background. Upon making the traffic stop, Officer Garcia made contact with Defendant and her passenger, ran a warrant check on both, and spoke with Defendant for approximately twenty minutes before writing her two citations, one for failure to maintain a lane and one for driving without a driver's license. Once the citations were written and issued, Officer Garcia then asked Defendant if he could ask her a couple more questions. The renewed questioning went on for an additional fifteen minutes and included the questioning of the passenger. Sometime during the additional questioning—approximately twenty-seven minutes after the initial stop—Officer Garcia noted that Defendant and the passenger gave inconsistent answers to his questions. Officer Garcia then obtained consent from Defendant and the passenger to search the vehicle. Ultimately, the search of the vehicle resulted in the discovery of four bundles of methamphetamine, leading to felony charges against Defendant for trafficking of controlled substances (methamphetamine) (possession with intent to distribute) and conspiracy to commit trafficking of methamphetamine.

{4}    Defendant moved to suppress the evidence, arguing that (1) the initial stop violated the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution, and (2) Officer Garcia impermissibly expanded the scope of the traffic

stop. The district court held a hearing on Defendant's motion. The only issue addressed by the district court was whether Officer Garcia had reasonable suspicion that Defendant violated Section 66-7-317(A). In pertinent part, Section 66-7-317(A) provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> A. a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]

{5} Officer Garcia testified at the hearing that he saw the tires on Defendant's vehicle touch the yellow line of the shoulder. However, according to the district court, Officer Garcia's dash cam video—admitted into evidence at the hearing without objection—showed that the tires on Defendant's vehicle touched, but did not cross, the yellow line, and only did so once. The district court, based upon its own observation of the incident via the dash cam video, specifically found that the only potential violation of Section 66-7-317(A) was the single touching of the shoulder line. Additionally, although Officer Garcia testified that Defendant's action "could have" constituted "some type" of safety risk to herself and her passenger, the district court found the evidence of a safety concern to be insufficient, especially where the video evidence showed nothing on the left-hand side of the vehicle, and the vehicle only touched the shoulder line momentarily.

3

{6}     At the conclusion of the suppression hearing, the district court decided that the one, brief touching of the left yellow shoulder line, where Defendant was in the process of passing two semi-trucks on the interstate, did not provide Officer Garcia with justification to conduct a traffic stop. Specifically, the district court indicated that Section 66-7-317(A)'s requirement that a driver maintain a single lane "as nearly as practicable" appears "to allow some slack" and that it is reasonable—and safe—for a driver to move as far to the left as possible when passing a semi-truck at seventy-five miles per hour. Consequently, the district court suppressed the evidence discovered as a result of the stop. This appeal by the State followed.

**DISCUSSION**

{7}     On appeal, the State contends that "[t]he district court erred as a matter of law in determining that the statute governing driving on roadways laned for traffic[, Section 66-7-317,] permits drivers to cross or touch the lane line once without violating the statute." The State also argues that there was reasonable suspicion to believe that Defendant was driving while impaired.

{8}     Initially, we are not persuaded by the State's alternative argument based on impairment. We note the issue of Defendant's impairment was not argued by the State below, either in its response to Defendant's motion to dismiss or during the suppression hearing. Officer Garcia specifically testified that he stopped Defendant based solely on the violation of Section 66-7-317(A), and the district court made a point of emphasizing that its ruling was based entirely on its determination that under the factual circumstances presented, there was no a violation of Section 66-7-317(A).

4

As a result, we are not convinced that this issue was ever presented to the district court for a ruling or preserved for appeal. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 ("In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)); *State v. Lucero*, 1999-NMCA-102, ¶ 45, 127 N.M. 672, 986 P.2d 468 (refusing to address arguments that were not made in the district court and no assertion of fundamental error is made on appeal). Therefore, we will only address the question of whether the district court's determination that Officer Garcia did not have reasonable suspicion to stop Defendant for a violation of Section 66-7-317(A) was error.

**I.     Standard of Review**

{9}     In reviewing a district court's suppression ruling, this Court draws all reasonable inferences in favor of the ruling and defers to the district court's findings of fact as long as they are supported by substantial evidence. *See State v. Jason L.*, 2000-NMSC-018, ¶¶ 10-11, 129 N.M. 119, 2 P.3d 856. We "review de novo the district court's application of the law to those facts." *State v. King*, 2013-NMSC-014, ¶ 4, 300 P.3d 732.

{10}     Statutory construction is a matter of law that is also reviewed de novo. *See State v. Rivera*, 2004-NMSC-001, ¶ 9, 134 N.M. 768, 82 P.3d 939. When we construe a statute, our "guiding principle is that we should determine and effectuate the

Legislature's intent when it enacted the statute." *State ex rel. Brandenburg v. Sanchez*, 2014-NMSC-022, ¶ 4, 329 P.3d 654. "In discerning the Legislature's intent, [the appellate courts] are aided by classic canons of statutory construction[] and . . . look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 12, 150 N.M. 97, 257 P.3d 917 ( internal quotation marks and citation omitted).

**II.    Analysis**

{11}    The stop of a vehicle for the purpose of investigating a traffic violation is an investigative seizure under the Fourth Amendment and must be justified at its inception. *See State v. Leyva*, 2011-NMSC-009, ¶ 10, 149 N.M. 435, 250 P.3d 861. Justification consists of an officer having reasonable, articulable suspicion that a particular individual is breaking or has broken the law. *See Jason L.*, 2000-NMSC-018, ¶ 20 (setting forth the standard for reasonable suspicion); *see also State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M. 414, 120 P.3d 836 (stating that New Mexico courts apply a reasonable suspicion analysis for investigatory traffic stops), *overruled on other grounds by Leyva*, 2011-NMSC-009. This includes reasonable suspicion that a traffic law has been violated. *State v. Prince*, 2004-NMCA-127, ¶ 9, 136 N.M. 521, 101 P.3d 332.

{12}    To reiterate, Section 66-7-317(A), in relevant part, requires that whenever any roadway has been divided into two or more clearly marked lanes for traffic, "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be

6

moved from such lane until the driver has first ascertained that such movement can be made with safety[.]"

{13} The substance of the State's argument on appeal is based on the proper construction of the portion of Section 66-7-317(A) requiring a driver—before moving from a single lane—to "ascertain[] that such movement can be made with safety." In making its argument, the State focuses on two opinions, *Archibeque v. Homrich*, 1975-NMSC-066, 88 N.M. 527, 543 P.2d 820, and *Aragon v. Speelman*, 1971-NMCA-161, 83 N.M. 285, 491 P.2d 173, each interpreting the previous version of Section 66-7-317, albeit in the context of civil litigation. The State also spends a portion of its brief in chief analyzing our unpublished opinion, *City of Farmington v. Fordyce*, No. 30,638, mem. op. (N.M. Ct. App. Nov. 21, 2011) (non-precedential). At its heart, the State's argument is essentially that our appellate courts have improperly required that a driver create a threat to safety before finding a violation of Section 66-7-317(A). The State asserts that the appropriate analysis should focus on whether the driver in fact "ascertained" that his or her movement from the lane can be made with safety. However, given the evidence, the argument at the suppression hearing, and the district court's ultimate decision, any additional ruling based upon what a driver "ascertained" appears to be a question for another day.

{14} Specifically, our review of the suppression hearing reveals that the safety aspect of this particular case played only an inferential part in the district court's overall decision. Instead, it is clear that the dispute in the district court regarding the constitutionality of the traffic stop addressed the proper construction of the portion

7

of the statute requiring that a vehicle be driven "as nearly as practicable . . . within a single lane." Section 66-7-317(A).

**A.      "As Nearly as Practicable"**

{15}      Arguing against suppression, the State asserted that this case is a "carbon copy" of *United States v. Bassols*, 775 F. Supp. 2d 1293 (D. N.M. 2011), a federal district court case interpreting Section 66-7-317(A), and urged the district court to find that the touching of the shoulder line by Defendant justified the traffic stop. In *Bassols*, however, the federal district court recognized that "[b]ecause no published New Mexico court opinion has addressed whether a driver violates Section 66-7-317 by making contact with the lane boundary line, [it] must make an *Erie*-guess as to how the New Mexico [appellate courts] would rule." 775 F. Supp. 2d at 1300. In the present case, the district court disagreed with the State's characterization of the holding in *Bassols*—establishing a strict per se violation of the statute whenever a driver drives on, or touches, a lane line—and concluded that the statute's "as nearly as practicable" language "allow[s] some slack" depending on the factual circumstances. Consequently, after taking into account the factual circumstances of this case, the district court found that Defendant's single, momentary touching of the shoulder line did not constitute a violation of Section 66-7-317(A).

{16}      The question of what it means to drive a vehicle "as nearly as practicable" within a single lane is an issue that has not been authoritatively defined by New Mexico appellate courts. In order to determine the meaning of the phrase, it is necessary for this Court to engage in a statutory construction analysis of Section 66-

8

7-317(A). In doing so, we look first to the plain language used by the Legislature. *See State v. Young*, 2004-NMSC-015, ¶ 5, 135 N.M. 458, 90 P.3d 477 (stating that we first look to the statute's plain language, which is "the primary indicator of legislative intent" (internal quotation marks and citation omitted)). "When a term is not defined in a statute, we must construe it, giving those words their ordinary meaning absent clear and express legislative intention to the contrary." *State v. Tsosie*, 2011-NMCA-115, ¶ 19, 150 N.M. 754, 266 P.3d 34 (internal quotation marks and citation omitted). Our courts often use dictionary definitions to ascertain the ordinary meaning of words that form the basis of statutory interpretation inquiries. *See State v. Boyse*, 2013-NMSC-024, ¶ 9, 303 P.3d 830.

{17}     In determining the ordinary meaning of the phrase "as nearly as practicable," we observe that "nearly" is defined as "[a]lmost but not quite[; i]n a close manner." *The American Heritage Dictionary of the English Language* 1177 (5th ed. 2011). "Practicable" means "[c]apable of being effected, done, or put into practice; feasible." *Id.* at 1383. Thus, expressing the phrase in its ordinary terms, the statute requires a driver to maintain his or her vehicle in a single lane—as closely as feasible—by utilizing good judgment and taking into account the safety considerations of a particular situation.

{18}     The very nature of this feasibility and safety qualification appears to indicate a "legislative intent to avoid penalizing brief, momentary, and minor deviations outside the marked lines." *State v. Livingston*, 75 P.3d 1103, 1106 (Ariz. Ct. App. 2003); *see id.* (interpreting the " 'as nearly as practicable' " language in Arizona's

9

similar version of Section 66-7-317(A)). To construe the statute otherwise, in the strict "bright line" manner the State argued to the district court—that a driver always violates the statute when, absent a legal lane change, he or she fails to maintain the vehicle inside the single lane lines on a multi-lane road—would render the "as nearly as practicable" language mere surplusage, which we are generally unwilling to do. *See Rivera*, 2004-NMSC-001, ¶ 18 ("We are generally unwilling to construe one provision of a statute in a manner that would make other provisions null or superfluous."). We hold, therefore, that the plain language of Section 66-7-317(A)—including the "as nearly as practicable" qualification—recognizes and contemplates circumstances under which a driver may momentarily leave his or her lane of travel without violating the statute.

{19}    With this qualification in mind, the question remains how we are to determine whether a driver has indeed driven as nearly as practicable within a single lane. The Tenth Circuit, interpreting Utah's version of Section 66-7-317(A), rejected the argument that a "single instance of crossing over the fog line can never violate the statute." *United States v. Alvarado*, 430 F.3d 1305, 1309 (10th Cir. 2013). Instead, the Tenth Circuit reiterated its holding in *United States v. Gregory*, 79 F.3d 973, 1978 (10th Cir. 1996), that the statute's " 'as nearly as practicable' " qualification "require[s] a fact-specific inquiry into the particular circumstances present during the incident in question to determine whether the driver could reasonably be expected to maintain a straight course at that time in that vehicle on that roadway." *Alvarado*, 430 F.3d at 1309; *see United States v. Cline*, 349 F.3d 1276, 1287 (10th Cir. 2003)

(stating that "the particular facts and circumstances of each case determine the result"); *United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999) (construing the Kansas version of Section 66-7-317(A), and concluding that the "use of the phrase 'as nearly as practicable' in the statute precludes . . . absolute standards, and requires a fact-specific inquiry"). This totality of the circumstances analysis takes into account whether there were any weather conditions, road features, or other circumstances that could have affected or interfered with a driver's ability to keep his or her vehicle in a single lane. *See Alvarado*, 430 F.3d at 1309.

{20}    Of particular note is the fact that the court in *Bassols*—after rejecting the defendant's argument that *touching* the lane line, as opposed to *crossing* the lane line, cannot ever constitute a violation of Section 66-7-317(A)—went on to apply the *Alvarado* totality of the circumstances analysis and concluded that "[i]n the complete absence of adverse driving conditions, there was not a single objective factor that might have made it impracticable for [the defendant] to stay entirely within a single lane." *Bassols*, 775 F. Supp. 2d at 1303. Thus, although the defendant's single departure from his lane in *Bassols* was not a per se violation of Section 66-7-317(A), the federal district court decided that the single touching of the lane line, under the circumstances presented in that case, was sufficient to give the officer reasonable suspicion to make the traffic stop. *Bassols*, 775 F. Supp. 2d at 1303.

{21}    Here, the State devotes only a handful of sentences in its brief in chief to the "as nearly as practicable" language. Notably, the State appears to have abandoned its reliance on *Bassols*, apparently in recognition that the case does not support the

11

argument made by the State in the district court that touching the lane line is a strict per se violation of the statute.[1] However, instead of directly challenging the district court's interpretation of Section 66-7-317(A)—which bears a striking resemblance to the *Alvarado* totality of the circumstances analysis—or its application to the facts of this case, the State simply refers to the lack of any "obstruction" that would have made it impracticable for Defendant to stay in her lane. We do not adopt such a limited view of the qualification language, and we conclude that a totality of the circumstances analysis, as utilized by the district court, is the appropriate means to gauge whether a driver has maintained his or her lane "as nearly as practicable."

{22}     Critically, the State does not address whether the totality of the circumstances of this case, as found and relied upon by the district court—Defendant was traveling on the interstate at seventy to seventy-five miles per hour, she was passing two semi-trucks in the left-hand passing lane, common driving experience advises leaving as much room as possible for safety when passing a semi-truck, and the entirety of the incident consisted of the vehicle's single, brief touching of the left-hand yellow shoulder line while passing the second semi-truck—are sufficient for the fact-finder to determine that Defendant safely maintained her lane of travel as nearly as

---

[1]We recognize that the specific question raised in *Bassols*—whether a vehicle must actually cross the lane line, as opposed to simply touching the lane line, in order for a driver to be in violation of Section 66-7-317(A)—has not yet been answered by our appellate courts. However, neither party in the present case squarely raised this issue below, and all participants, including the district court, appear to have assumed that touching the lane line is sufficient to support a potential violation of the statute. We proceed with that assumption in mind, without deciding the issue at this time.

practicable. Effectively, the district court determined that Defendant's slight touching of the lane line was feasibly and safely executed under the totality of the circumstances. This factual determination by the district court is also supported by the statutory directive that a vehicle overtaking another vehicle proceeding in the same direction shall pass on the left "at a safe distance[.]" NMSA 1978, § 66-7-310(A) (1978). In the absence of a persuasive argument to the contrary, we agree with the district court that, under the circumstances, the evidence supports its ruling that Defendant safely maintained her lane as nearly as practicable.

**B.      Safety Concerns**

{23}      The district court also found that there was insufficient evidence to support a safety concern on the part of Officer Garcia. As indicated earlier in this opinion, while this finding generated no argument at the suppression hearing, the State seizes upon the issue in its brief in chief. One portion of the statute requires that a driver "ascertain[]" whether movement from a single lane can be done "with safety[.]" Section 66-7-317(A). The State argues on appeal that Defendant here did not in fact ascertain whether her single, momentary touching of the shoulder line was indeed safe. The State claims that the facts also support its argument that Defendant "absently drifted" onto the shoulder line. According to the State, the failure on Defendant's part to ascertain the safety of her movement constituted a violation of the statute, regardless of the fact that no actual safety issue occurred.

{24}      We first note that this distinction, between a driver's "ascertaining" whether a movement was safe and the factual establishment of a safety concern, was not raised

13

or argued by the State below. As a result, it was not specifically addressed by the district court outside its ruling that the evidence of a safety concern was insufficient. Additionally, the district court could reasonably infer that Defendant did in fact ascertain the safety of her movement by driving to the far left side of her lane while passing the semi-trucks—it provided a safer distance than driving in the middle of her lane during this passing maneuver. *See* § 66-7-310(A).

{25} Given our determination that sufficient evidence was presented to support the district court's determination that Defendant safely maintained her lane as nearly as practicable, we need not further consider the State's alternative theories regarding obstructions or the practicability of passing maneuvers. To do so in the context of this case would be to speculate and render an advisory opinion. *See State v. Ordunez*, 2012-NMSC-024, ¶ 22, 283 P.3d 282 ("It is not within the province of an appellate court to decide abstract, hypothetical or moot questions in cases wherein no actual relief can be afforded." (alteration, internal quotation marks, and citation omitted)).

{26} In summary, we conclude that under the totality of the circumstances found to exist by the district court, Defendant's isolated, momentary touching the left shoulder line did not give rise to a reasonable suspicion of a violation of Section 66-7-317(A). Consequently, because the stop here was not predicated on reasonable suspicion, the traffic stop was invalid.[2]

---

[2]Having decided that the traffic stop was invalid under the Fourth Amendment, we need not address Defendant's argument under Article II, Section 10 of the New Mexico Constitution. *See State v. Rowell*, 2008-NMSC-041, ¶ 12, 144 N.M. 371, 188 P.3d 95 (recognizing that "[b]ecause both the United States and the New Mexico

### III. Suppression

{27} "It is established law that evidence discovered as a result of the exploitation of an illegal seizure must be suppressed unless it has been purged of its primary taint." *State v. Portillo*, 2011-NMCA-079, ¶ 25, 150 N.M. 187, 258 P.3d 466. The State did not argue in the district court, nor does it argue on appeal, that the evidence was somehow purged of the taint from the illegal traffic stop. Thus, we cannot say that the district court erred in suppressing the evidence discovered in Defendant's vehicle.

### CONCLUSION

{28} For the foregoing reasons, we conclude that substantial evidence was presented to support the district court's determination that the traffic stop of Defendant's vehicle, for a violation of Section 66-7-317(A), was invalid. We further conclude that the evidence discovered as a result of the traffic stop was the fruit of the illegal stop, and therefore suppression was proper. Accordingly, we affirm the district court.

{29} **IT IS SO ORDERED**.

_____
**TIMOTHY L. GARCIA, Judge**

---

Constitutions provide overlapping protections against unreasonable searches and seizures, we apply our interstitial approach" (citing *State v. Gomez*, 1997-NMSC-006, ¶¶ 19-23, 122 N.M. 777, 932 P.2d 1)); *see also Gomez*, 1997-NMSC-006, ¶ 19 (stating that the interstitial approach requires that we consider first "whether the right being asserted is protected under the federal constitution[,]" and if it is protected, "then the state constitutional claim is not reached").

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**JULIE J. VARGAS, Judge**

16