2007-NMSC-005

152 P.3d 821

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Karen SMALLWOOD, Defendant–
Appellant.**

**No. 29,357.**

Supreme Court of New Mexico.

Feb. 2, 2007.

John Bigelow, Chief Public Defender, Lelia L. Hood, Assistant Public Defender, Jeffrey J. Buckels, Assistant Public Defender, Albuquerque, NM, for Appellant.

Gary King, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

CHÁVEZ, Chief Justice.

## I. BACKGROUND

{1} Among other charges, a grand jury indicted Defendant Karen Smallwood on one count of first-degree murder on November 17, 2004. *See* NMSA 1978, § 30–2–1(A) (1994). Smallwood was arraigned in the First Judicial District Court on November 22, 2004. At a pre-trial conference ninety-eight days later, the State filed notice of its intent to seek the death penalty. *See* Rule 5–704(A) NMRA. Instead of citing the aggravating circumstances as required by our rules, the State's notice cited the mitigating circumstance that the defendant is likely to be rehabilitated as its basis for seeking the death penalty. *See* NMSA 1978, § 31–20A–6(G) (1979).

{2} Rule 5–704(A) provides that the State "shall file a notice of intent to seek the death penalty within ninety (90) days after arraignment unless good cause is shown." Arguing that the State's notice was eight-days untimely and that the State did not properly specify the statutory aggravating circumstances, Smallwood filed a motion to bar the State from seeking the death penalty in her case. In response, the State argued that it had good cause for the late filing based on the complex nature of the case and the great amount of material that needed to be reviewed before making its decision to seek the death penalty.

{3} At a hearing on Smallwood's motion, the trial court noted its concern that the State did not file a motion to extend the ninety-day period before the deadline had expired. Nonetheless, because the rule does not explicitly provide for such a procedure, the court went on to find that the State had good cause to file the notice late because the State had acted diligently and Smallwood was not prejudiced by the eight-day-late filing. As a result, the district court allowed the State to file an amended notice including the proper aggravating circumstance.[1] *See* NMSA 1978, § 31–20A–5(G) (1981) (providing that the murder of a witness for certain purposes is an aggravating circumstance). Finally, concluding that it would advance the ultimate termination of this case to know immediately whether it had erred, the trial court entered an order allowing for an interlocutory appeal. *See* NMSA 1978, § 39–3–3(A)(3) (1972). Shortly thereafter, Smallwood applied to this Court for an interlocutory review of the trial court's denial of her motion and we granted the application. *See* Rule 12–203 NMRA.

{4} On interlocutory appeal, Smallwood makes two main arguments in favor of reversing the trial court. Her first is that Rule 5–704(A) is "jurisdictional" in that a prosecutor may not assert good cause to excuse the failure of filing a notice after the ninety days has expired. Instead, Smallwood claims that, within ninety days of arraignment, the State must either: (1) file its notice of intent to seek the death penalty; (2) make a "protective" filing, leaving the door open to it being withdrawn; or (3) seek and receive from the trial court an extension of time in which to file its notice. Smallwood's second

---

1. Given the seriousness of a death penalty case, the trial court noted that it was "very concerned" by the fact that the District Attorney's office not only filed the notice eight days late, but that it also cited the wrong section as an aggravator.

argument is that, in any event, the State did not have good cause for failing to file its notice within ninety days of her arraignment.

{5} The State responds by first arguing that we lack jurisdiction to hear this case. Second, noting that Rule 5–704(A) does not expressly require a prosecutor to request an extension of time within ninety days after arraignment, and that Rule 5–104(B) NMRA typically allows for such requests after the expiration of time limits, the State asserts that the trial court was authorized to extend the time limit after it had initially expired. Finally, the State claims that the trial court correctly determined that good cause existed to excuse the State's failure to timely file its notice of intent to seek the death penalty.

## II. THIS COURT HAS JURISDICTION TO HEAR INTERLOCUTORY APPEALS IN A CASE INVOLVING THE DEATH PENALTY

{6} Article VI, Section 2 of the New Mexico Constitution provides that our appellate jurisdiction extends to appeals from district court judgments imposing a sentence of life imprisonment or death, and "as may be provided by law." N.M. Const. art. VI, § 2. The phrase "as may be provided by law" means that our Constitution or Legislature must vest us with appellate jurisdiction—we cannot create jurisdiction ourselves through our rule-making authority. *See State ex rel. N.M. Judicial Standards Comm'n v. Espinosa*, 2003–NMSC–017, ¶ 28, 134 N.M. 59, 73 P.3d 197; Seth D. Montgomery & Andrew S. Montgomery, *Jurisdiction as May Be Provided by Law: Some Issues of Appellate Jurisdiction in New Mexico*, 36 N.M. L.Rev. 215, 216–17 (2006). Thus, since this interlocutory appeal is not a judgment from a district court imposing a sentence of life imprisonment or death, our jurisdiction must be found elsewhere in the Constitution or legislation.

{7} The State directs us to various statutes, the most important of which being Section 34–5–14. *See* NMSA 1978, § 34–5–14 (1972) (setting forth the scope of the Supreme Court's appellate jurisdiction); *see also id.* § 34–5–10 (1966) (conferring jurisdiction on cases transferred to this Court by the Court of Appeals); *id.* §§ 39–7–1 to –13 (1997) (conferring jurisdiction on cases certified to this Court by other courts). Among other things, Section 34–5–14 provides that our appellate jurisdiction "extends to all cases where appellate jurisdiction is not specifically vested by law in the court of appeals." § 34–5–14(A). The State points out that the statute vesting appellate jurisdiction in the Court of Appeals provides that the Court of Appeals has appellate jurisdiction over "criminal actions, except those in which a judgment of the district court imposes a sentence of death or life imprisonment." NMSA 1978, § 34–5–8(A)(3) (1983). The State concludes that this interlocutory appeal is taken as part of a "criminal action" and that, since it does not involve a judgment imposing a sentence of life imprisonment or death, jurisdiction over this matter is vested exclusively in the Court of Appeals.

{8} Smallwood claims that *State v. Ogden*, 118 N.M. 234, 880 P.2d 845 (1994), establishes our jurisdiction over interlocutory appeals involving pre-trial death penalty procedures. In *Ogden*, we decided on interlocutory appeal that Article VI, Section 3, which vests us with superintending control over lower state courts, gave us the inherent power to authorize district courts to determine pre-trial whether probable cause exists to support aggravating circumstances. *Id.* at 239–40, 880 P.2d at 850–51; *see* N.M. Const. art. VI, § 3. Although *Ogden* came to us on interlocutory appeal from the district court, the jurisdictional issue was simply not addressed as it appears that neither party raised the issue. We take this opportunity to analyze our interlocutory jurisdiction in death penalty cases.

{9} We begin our search for interlocutory jurisdiction in the one statute dealing specifically with appellate jurisdiction over interlocutory appeals in criminal cases. *See* NMSA 1978, § 39–3–3 (1972). Subsection A of that statute sets out the general jurisdictional rule that "[i]n any criminal proceeding in district court an appeal may be taken by the defendant to the supreme court or court of appeals, as appellate jurisdiction may be vested by law in these courts." § 39–3–3(A). Subsection A contains three clarifying para-

graphs, the last of which provides that the defendant may file an interlocutory appeal "in the appropriate appellate court." § 39–3–3(A)(3).

{10} By using the language "in the appropriate appellate court," we believe the legislature intended this Court to have jurisdiction over certain interlocutory appeals in criminal cases.[2] Had the legislature intended the Court of Appeals to entertain all of a defendant's interlocutory appeals, it simply would have stated so. The question thus becomes: over which interlocutory appeals in criminal cases did the legislature intend for this Court to have jurisdiction? The answer lies in Section 39–3–3(A), which provides that a criminal defendant may appeal to this Court when appellate jurisdiction is vested by law in this Court. Since we are vested by law with exclusive appellate jurisdiction in cases involving a sentence of life imprisonment or death, it is clear to us that the legislature conferred this Court with jurisdiction over a criminal defendant's interlocutory appeal in cases where a sentence of life imprisonment or death *could be* imposed. An interlocutory appeal by its very nature involves issues which are not contained in a final judgment. Yet, in its wisdom, the legislature has provided a mechanism for early appeals in criminal cases when, in the judgment of both the lower court and the appellate court, appellate review will advance the ultimate termination of the litigation.

{11} Reading Section 39–3–3 any other way would make a nullity of the statute. *See State v. Rivera,* 2004–NMSC–001, ¶ 18, 134 N.M. 768, 82 P.3d 939 ("We are generally unwilling to construe one provision of a statute in a manner that would make other provisions null or superfluous."). An interlocutory appeal may be taken only from a district court. *See* Black's Law Dictionary 106 (8th ed.2004). Moreover, the only criminal cases that can be appealed directly to this Court from a district court are those cases where a sentence of life imprisonment or death has been imposed. Thus, since we are clearly authorized to hear interlocutory appeals in

criminal matters, we conclude that the legislature intended for us to have jurisdiction over interlocutory appeals in situations where a defendant may possibly be sentenced to life imprisonment or death. *See State v. Javier M.,* 2001–NMSC–030, ¶ 27, 131 N.M. 1, 33 P.3d 1 ("We read . . . legislation in its entirety and 'construe each part in connection with every other part to produce a harmonious whole . . . .' ") (quoting *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988)).

## III.  RULE 5–704(A)

### A.  Standard of Review

{12} Smallwood and the State disagree as to the standard of review we should use in this case. Smallwood asserts that we should review the district court's action de novo since she asks us to interpret a rule of criminal procedure. *See State v. Stephen F.,* 2006–NMSC–030, ¶ 7, 140 N.M. 24, 139 P.3d 184. The State, on the other hand, contends that we should use an abuse of discretion standard since the issue hinges on whether the district court correctly concluded that the State made a sufficient showing of good cause. *See State v. Herrera,* 2001–NMCA–073, ¶ 31, 131 N.M. 22, 33 P.3d 22. Since it involves interpretation of a rule, we review de novo the district court's conclusion that the State should be allowed to file its notice of intent to seek the death penalty after the ninety days has expired. We hold that Rule 5–704(A) requires the State to either file its notice or a request for an extension within the ninety-day period. Such was our intent when we adopted the rule. Yet, we erred in drafting the rule because Rule 5–104(B) allows for enlargement of time limits, except in specified instances. We neglected to add Rule 5–704(A) as an exception, but do so now. Notwithstanding, the State still does not prevail because it never appropriately motioned the district court to allow it to file a late notice. We do not reach the State's good cause argument except to note that, had we done so, we would have reviewed the

---

2. Although the State never directed us to this statute dealing with interlocutory appeals, the State, at oral argument, made the broad asser-

tion that our Constitution and statutes provide that *all* interlocutory appeals go to the Court of Appeals. This is plainly wrong.

issue using an abuse of discretion standard. *See id.*

## B. Rule 5–704(A) Is Not Coextensive with the Requirements of Due Process

■ {13} Citing *Lankford v. Idaho,* 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991), and *United States v. Ferebe,* 332 F.3d 722, 736 (4th Cir.2003), Smallwood appears to assert that our ninety-day rule is coextensive with her due process right to receive adequate notice of the State's intent to impose the death penalty. We do not find this argument persuasive. First, *Lankford* merely held that due process requires invalidation of a death sentence when the defendant does not receive adequate notice to the extent there is an impermissible risk of an error in the adversarial process. *See Lankford,* 500 U.S. at 127, 111 S.Ct. 1723. Second, *Ferebe* interpreted a defendant's federal substantive, statutory right that he or she receive "reasonable notice" before trial of the prosecution's intent to seek the death penalty. *See Ferebe,* 332 F.3d at 730–31; *see also* 18 U.S.C. § 3593(a). The Fourth Circuit simply held in *Ferebe* that a post-trial determination of prejudice to the defendant was not an adequate remedy to vindicate this substantive right. *Id.* at 730–32. Finally, we held in *State v. Coffin,* 1999–NMSC–038, ¶ 65, 128 N.M. 192, 991 P.2d 477, that a death penalty notice filed three weeks before trial satisfied due process under the circumstances of that case.

{14} Rule 5–704(A) does not bestow any substantive rights upon a defendant. This Court does not have the power to judicially legislate substantive rights. *See State v. Arnold,* 51 N.M. 311, 314, 183 P.2d 845, 846 (1947); *Johnson v. Terry,* 48 N.M. 253, 258–60, 149 P.2d 795, 797–99 (1944). Since the Legislature has not weighed in on this issue, Smallwood's substantive right to receive notice of the State's intent to seek the death penalty is governed solely by the limits of the due process clauses of the United States and New Mexico Constitutions. Due process does not require that the State file its notice within ninety days of a defendant's arraignment.

■ {15} The fact that Rule 5–704(A) does not confer a substantive right, however, does not mean that it is without effect. We promulgated Rule 5–704(A) under our constitutional authority to exercise superintending control over all inferior courts. N.M. Const. art VI, § 3; *see State v. Roy,* 40 N.M. 397, 420–23, 60 P.2d 646, 660–62 (1936). This constitutional grant of power gives us the authority to make rules for the orderly flow of criminal cases through lower courts. *See Coffin,* 1999–NMSC–038, ¶ 65 n. 3, 128 N.M. 192, 991 P.2d 477 (noting in a case before Rule 5–704(A) was promulgated that a "late filing of a notice of intent to seek the death penalty may potentially wreak havoc with a trial court's schedule"); *State ex rel. Delgado v. Stanley,* 83 N.M. 626, 627, 495 P.2d 1073, 1074 (1972) (noting that the rule providing that a trial commence within six months, or the charges are to be dismissed with prejudice, was promulgated to "expedit[e] the flow of criminal cases through the courts"); *State v. Bolton,* 1997–NMCA–007, ¶ 8, 122 N.M. 831, 932 P.2d 1075 (noting that the six-month rule was adopted to regulate the "efficient management of criminal prosecutions so that neither the public nor defendant suffer[ ] undue delay"). Thus, while we could not, for instance, enact a procedural rule voiding the State's right to seek the death penalty (since it is clearly authorized by the Legislature), we can promulgate "reasonable regulations affecting the time and manner" of exercising that right. *Arnold,* 51 N.M. at 314, 183 P.2d at 846; *see also State ex rel. Gesswein v. Galvan,* 100 N.M. 769, 772, 676 P.2d 1334, 1337 (1984).

## C. Rule 5–704(A) Requires the State to File Its Notice of Intent to Seek the Death Penalty or a Request for an Extension Upon a Showing of Good Cause Within Ninety Days of Defendant's Arraignment

{16} In its entirety, the rule currently provides:

> In any case in which the state may seek the death penalty, the state shall file a notice of intent to seek the death penalty within ninety (90) days after arraignment unless good cause is shown. The notice of intent shall specify the elements of the

statutory aggravating circumstances upon which the state will rely in seeking a sentence of death. Rule 5–704(A) NMRA. Smallwood claims that, by using the term "shall," the rule requires—with no exceptions—the State to either file its notice or request for an extension within ninety days after the defendant's arraignment. In essence, Smallwood believes that the clause "unless good cause is shown" does not apply once the ninety-day period has run. The State contends that the clause "unless good cause is shown" means that a district court can reopen the time period in which to file a notice of intent after the ninety days has expired on a showing of good cause.

{17} In support of its argument, the State directs us to Rule 5–604(E) NMRA, Rule 12–201(E) NMRA, and Rule 5–104(B) NMRA. Rule 5–604(E) and Rule 12–201(E) give instruction for determining whether a late filing is allowed for, respectively, an extension of time for commencement of trial and a notice of appeal. Rule 5–604(E) provides that a request for an extension of time for commencement of trial based on good cause must be filed within the time provided for by the rule, except that a request may be filed up to ten days late if the reason for the delay "is based on exceptional circumstances beyond the control of the state or trial court." Rule 12–201(E)(2) provides that a district court may, "upon a showing of excusable neglect or circumstances beyond the control of the appellant," extend for thirty days the time for filing a notice of appeal after the time limits for filing have expired. Likewise, the rule provides that, upon good cause shown, the district court may, prior to the running of the time limits, extend the time limits for thirty days for filing a notice of appeal. Rule 12–201(E)(1) NMRA.

{18} Unlike Rules 5–604(E) and 12–201(E), Rule 5–704(A) does not specifically state the procedures to be followed for a late request. Smallwood contends that this means a late request is not allowed. However, the State asserts that this case is governed by Rule 5–104(B), which provides in relevant part:

> When by these rules . . . an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done; but it may not extend the time for . . . taking an appeal . . . or for extending time for commencement of trial.

Rule 5–104(B)(2) NMRA. Our intent in promulgating Rule 5–704(A) was to require the State to act, either by filing its notice or by seeking an extension, within ninety days of the defendant's arraignment.

{19} In light of the fact that Rule 5–104(B) excludes the two rules that explicitly contain a provision limiting late filings, but does not exclude Rule 5–704(A), we understand that the rule as currently drafted should be read as the State suggests. That is, it is not unreasonable to conclude that the rule currently allows the district court to permit the State, after the expiration of the ninety days and upon motion, to file its notice of intent when there is good cause for the State not having filed its notice earlier. Nonetheless, even accepting this reading, the State does not prevail in the instant case.

### D. The State Did Not Properly Motion the District Court to Enlarge the Time Limits for Filing Its Notice

■ {20} We do not reach the good cause issue because we conclude that the State never properly motioned the trial court to allow a late filing of its notice of intent to seek the death penalty. When the State filed its notice of intent on February 28, 2005, eight days late, the State did not affirmatively motion the district court to allow the filing. Four months later, on June 30, 2005, the district court held a hearing on Smallwood's motion to strike the notice. At that hearing, *in response* to Smallwood's motion, the State orally requested the district court to allow it to file a late notice.[3] The State conceded as much at oral argument.

---

3. After reviewing the record, it is questionable whether the State even went so far at the hearing to affirmatively request the district court to allow it to file a late notice. Nonetheless, we assume for purposes of this discussion that the State did so.

The State asserts that this request satisfies Rule 5–104(B)'s requirement that the time limit will only be reopened for good cause "upon motion" by the party seeking the extension. We disagree.

{21} As an initial matter, we do not concern ourselves with whether the "upon motion" mandate of Rule 5–104(B) requires a formal written motion, or if an oral motion at a hearing will suffice. *See* Rule 5–120(A)–(B) NMRA. Instead, we assume that an oral motion at a hearing is adequate, and that the State did in fact make an oral request for a late filing at the hearing. What matters here is that the State made its request for a late filing in response to Smallwood's motion to strike the notice because of the State's untimely action in the first place.

{22} In *State v. Guzman*, 2004–NMCA–097, ¶ 9, 136 N.M. 253, 96 P.3d 1173, after discussing the rationale and policies behind the six-month rule, the Court of Appeals held that to trigger a dismissal, a defendant must file a motion to dismiss. *See* Rule 5–604 NMRA. Because the defendant had "slept upon" her rights under the rule by not timely filing a motion to dismiss, the Court upheld her conviction when the State had not complied with the rule. *Guzman*, 2004–NMCA–097, ¶¶ 11–13, 136 N.M. 253, 96 P.3d 1173.

{23} In this case, Smallwood did not sleep on her rights. Instead, after the State filed its late notice of intent to seek the death penalty, Smallwood moved the district court to strike the notice because it was untimely. Under Rule 5–104(B)(2), when the State filed its late notice, it was required to motion the district court to allow the late filing. It did not do so. We will not, on the one hand, penalize a defendant for not moving to dismiss under Rule 5–604 and, on the other, penalize a defendant for moving to strike an untimely death penalty notice. To hold that the State may make its Rule 5–104(B) motion *in response* to a defendant's timely motion to strike the State's untimely notice would make a mockery of the rule. We will not read Rule 5–104(B) to reach such an ironic and unjust result. Instead, the district court should have granted Smallwood's motion to strike the death penalty notice because the

State did not make a proper motion to allow it to file a late notice.

## E. Rule 5–704(A) Should Be Modified to Be Consistent with This Opinion

■ {24} Having concluded that Smallwood's motion should have been granted, we are persuaded that now is the time for our Rules Committee to modify Rule 5–704(A) so that it may clearly reflect our original intent in promulgating the rule. In the meantime, as of the publication of this Opinion, the State is required within ninety days of arraignment to either: (1) file its notice of intent to seek the death penalty, or (2) based upon a showing of good cause, request an extension of time in which to file its notice.

{25} Rule 5–704(A) stems from a State Bar Task Force convened for the purpose of studying the death penalty in New Mexico. After working for over three years, the Task Force submitted its final report to the Board of Bar Commissioners on January 23, 2004. *See* State Bar of N.M. Task Force to Study the Admin. of the Death Penalty in N.M., *Final Report* (2004). The report notes that one factor strongly affecting the time and cost of a death penalty case is the timing of the prosecution's decision to pursue the death penalty. *Id.* at 5. Continuing, the report states:

> However, as of January 2004, the timing of notice is a matter solely within the discretion of the prosecution, subject only to the requirement that the defense receive notice within sufficient time to prepare for trial. Thus, the possibility of a death sentence and the need to treat the case as a death case can continue for months, even years, without a clear resolution. *If the prosecution were forced to make a binding decision on the issue relatively early in the case,* it would save significantly on the defense costs of these cases while, most importantly, enhancing the quality of the defense provided.

*Id.* at 6 (emphasis added). Less than four months after this report was published, and after consultation with the offices of the Attorney General and the Public Defender and submitting the rule for public comment, we promulgated Rule 5–704(A). Besides ensur-

ing that death penalty cases flow smoothly through the criminal justice system, our intent in requiring the State to act within ninety days was motivated by our desire to protect the public fisc and to enhance the quality of defense in death penalty cases. *See* N.M. Const. art VI, § 3; Rule 5–101(B) NMRA.

{26} In redrafting Rule 5–704(A), the Rules Committee should, consistent with this opinion, preclude the State from filing a late notice without first having sought, within ninety days of arraignment, leave of the trial court on the basis of good cause. At the same time, Rule 5–104(B) should be modified as well in order to clearly reflect our holding that it does not apply to Rule 5–704(A).

{27} Finally, we note that we reject Smallwood's remedy of a "protective filing." We believe that ninety days is more than enough time for the State to fully consider the evidence and to come to a decision as to whether to seek the death penalty. Although we have not surveyed all jurisdictions that impose the death penalty, it appears that prosecutors in other states are typically required to file a notice of intent to seek the death penalty sooner than ninety days after indictment or arraignment. *See, e.g.,* Idaho Code Ann. § 18–4004A(1) (2004) (within thirty days after entry of plea); Wash. Rev.Code § 10.95.040(2) (2006) (within thirty days after arraignment); Ariz. R.Crim. P. 15.1(i)(1) (within sixty days after arraignment); Nev. Sup.Ct. R. 250(4)(c) (within thirty days after filing of information or indictment). *But see* Tenn. R.Crim. P. 12.3(b)(1) (allowing notice within thirty days of trial). The purpose of our rule is to expedite a binding decision so that the case may be heard on the merits in a timely and cost-effective manner. While we do not wish to suggest that the State should not withdraw seeking the death penalty after having done so in good faith, we discourage the State from adopting a policy of filing notices in all death-eligible cases simply to avoid the diligent task of coming to a timely decision.

## IV. CONCLUSION

{28} We have jurisdiction to hear this interlocutory appeal pursuant to Section 39–

3–3. The district court should have granted Smallwood's motion to strike the notice and to bar the State from seeking the death penalty in her case. We remand this case to the district court for proceedings consistent with this opinion.

{29} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and RICHARD C. BOSSON, Justices.