This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number:** _____

**Filing Date:** **June 1, 2012**

**NO. 32,836**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**CONTESSA HERRING,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
William G.W. Shoobridge, District Judge

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellant

Liane E. Kerr, LLC
Liane E. Kerr
Albuquerque, NM

for Appellee

**DECISION**

**MAES, Chief Justice.**

{1} This case is before us on interlocutory appeal from the Fifth Judicial District. We are asked to review the conduct of a detective from the Hobbs Police Department (Detective) when he informed Contessa Herring (Defendant) of her *Miranda* rights. It is undisputed that Defendant's interview with Detective was a custodial interrogation and that Detective read Defendant her *Miranda* warnings prior to the interrogation. Although Defendant said she understood her rights following Detective's reading of her *Miranda* rights, she claims that the State did not meet its burden of demonstrating by a preponderance of the evidence that she knowingly, intelligently, and voluntarily waived her rights. We hold that there was sufficient evidence from which the district judge could have found that Detective's reading of Defendant's rights was too rapid and garbled for comprehension and affirm the suppression of Defendant's statement.

**FACTS AND PROCEDURAL HISTORY**

{2} On the night of the incident, Detective interviewed Defendant in a standard interview room at the Hobbs police station. Defendant waited alone in the interrogation room for about thirty-eight minutes before Detective entered. When Detective entered the room, he introduced himself, asked Defendant her name, and informed her that she was not under arrest. Detective then told Defendant that he needed to read Defendant statements from a card before asking her some questions.

2

Defendant asked, "My *Miranda* rights?" Detective said "uh-huh" and told her she had probably seen *Miranda* rights given on television. Defendant responded, "Yeah."

{3} Detective proceeded to read Defendant her *Miranda* rights from the *Miranda* warning card he kept in his pocket. At the end of the recitation, he asked Defendant if she understood "that." Defendant said, "I understand." Defendant then talked to Detective about the incident for almost five hours. During the interview, Defendant admitted that prior to her son's death, she had slapped him twice and punched him in the head with a closed fist.

{4} The State charged Defendant with "knowingly, intentionally, and without justification, tortur[ing], cruelly confin[ing] or cruelly punish[ing] a child under 12 years of age, resulting in the death of [the child], contrary to Sections 30-6-1D(2), F, NMSA 1978." Julian Herring (Child), was Defendant's three-year-old son.

{5} Before trial Defendant filed a motion to suppress her statement from the night of the incident, claiming that she had not knowingly and voluntarily waived her right to remain silent during the interview. Defendant claimed that the Detective "read the warnings to [her] from a card so quickly as to be almost unintelligible (entire reading approximately 17 seconds) and totally garbled the last advice to [her] that 'you do not have to talk to me, but if you do, you have the right to stop talking at any time.'"

{6} Detective testified at the suppression hearing. A video recording of Detective's custodial interrogation of Defendant, a transcript of the interrogation procured by Defendant, and a copy of *Miranda* warning card that Detective carried in his pocket

were all entered into evidence. In the Order Suppressing Statement, the district judge made the following findings:

6. [Detective] read the warning from a pocket sized card very rapidly, completing the reading in only a matter of seconds;

7. The stenographic court reporter who transcribed the DVD of the warning given to [Defendant] did not understand the language of the warnings on the DVD to match the language of the advice of rights card used by [Detective];

8. The [c]ourt had to listen to the DVD of the warning given to [Defendant] three times, the final time with the [c]ourt reading a copy [of Detective's] advice of rights card along with the DVD, before the actual warnings could be deciphered;

9. The warnings were read so rapidly as to be garbled to such an extent that [Defendant] was not advised that she had the right to refuse to talk to [Detective] at any time and to stop talking at any time during the interrogation.

As a result of these findings, the district judge concluded that Defendant "did not make a knowing, voluntary, and intelligent waiver of her rights pursuant to the requirements of the New Mexico Constitution and the United States Constitution, because she was not advised of such rights in a manner in which she could [have understood] them," and therefore ordered that Defendant's statement to Detective be suppressed.

{7} The State appealed the district judge's suppression ruling to the Court of Appeals. *See* NMSA 1978, § 39-3-3(B)(2) (1972) ("In any criminal proceeding in district court an appeal may be taken by the state to the supreme court or court of

4

appeals, as appellate jurisdiction may be vested by law in these courts:  within ten days from a decision or order of a district court suppressing or excluding evidence . . . .").  Because intentional child abuse resulting in the death of a child under the age of twelve carries a potential sentence of life imprisonment, the Court of Appeals transferred the appeal to this Court pursuant to NMSA 1978, § 34-5-10 (1966).  *See State v. Smallwood*, 2007-NMSC-005, ¶ 11, 141 N.M. 178, 152 P.3d 821. ("[W]e conclude that the legislature intended for us to have jurisdiction over interlocutory appeals in situations where a defendant may possibly be sentenced to life imprisonment or death.")

**DISCUSSION**

{8}      When conducting a custodial interrogation, law enforcement officials "must advise a suspect that he [or she] has a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney, either retained or appointed." *State v. Martinez*, 1999-NMSC-018, ¶ 13, 127 N.M. 207, 979 P.2d 718 (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (internal quotation marks omitted) (alterations in original). "Before statements obtained during a custodial interrogation may be introduced at trial, the State must demonstrate a knowing, intelligent, and voluntary waiver of [his or her *Miranda*] rights by a preponderance of the evidence." *State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted).  When reviewing a claim that the admission of a police confession violates a defendant's constitutional rights, we "review the [district judge's] findings of fact

5

for substantial evidence and review de novo the ultimate determination of whether a defendant validly waived his or her *Miranda* rights prior to police questioning. In determining whether a waiver of rights is knowing, intelligent, and voluntary, we assess the totality of circumstances." *State v. Barrera*, 2001-NMSC-014, ¶ 23, 130 N.M. 227, 22 P.3d 1177. In assessing the totality of the circumstances, we look at factors such as "the mental and physical condition, background, experience, and conduct of the accused, as well as the conduct of the police, in determining whether the State has successfully carried its burden in demonstrating a knowing and voluntary waiver," indulging in every reasonable presumption against waiver. *Martinez*, 1999-NMSC-018, ¶ 14 (internal quotation marks and citations omitted).

{9}      Each Justice reviewed the DVD recording of Defendant's custodial interview the night of the incident. We note that after being taken to the police station, Defendant waited in a video-wired interrogation room for thirty-eight minutes. During this time Defendant was recorded sitting, rocking back and forth, sobbing, and praying. Defendant kept saying, "Please God, let my baby be ok." Defendant is also recorded leaving the interrogation room five times during the thirty-eight minute waiting period. Defendant repeatedly asked, either the officers or herself, how long she was going to have to wait, begging to get back to her baby. At one point during this time, Defendant left the room and upon her immediate return, threw up in a nearby trash can. It is apparent from the video that Defendant was both mentally and physically distraught from the time she entered the police station.

**{10}** When Detective finally entered the interrogation room, he talked to Defendant very slowly, saying, "You know, [Defendant], that you're not under arrest, right? I'm just here to talk to you and see what's going on." Then, after reminding Defendant for the second time that she was not under arrest, Detective proceeded to read Defendant her *Miranda* rights. Unlike the slow and unhurried pace in which Detective initially talked to Defendant, Detective read Defendant's rights in a hurried and garbled manner. Additionally, while testifying at the suppression hearing, Detective read the same rights at a slightly slower pace, approximately three seconds slower than when he read them to Defendant during the interview.

**{11}** Because we indulge in every presumption against waiver, we agree with the district judge that Detective read Defendant her rights in a garbled manner. It appears as if Detective merely wanted to get the "legal technicality" out of the way, rather than ensuring that Defendant understood her rights.

**CONCLUSION**

**{12}** Looking at the totality of the circumstances, the State did not meet its burden of making a prima facie case that Defendant knowingly waived her rights because Detective, who had before him an accused mother, anxious and distraught to know the status of her child, proceeded to rapidly recite Defendant's rights to her, thereby failing to effectively communicate the potential ramifications of her waiver. Accordingly, Defendant did not make a knowing, voluntary, and intelligent waiver. We affirm the district judge's order suppressing Defendant's statement and remand for further proceedings.

{13} **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Chief Justice**

**WE CONCUR:**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**