IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2013-NMSC-014

Filing Date:  April 15, 2013

Docket No. 33,395

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

      v.

DONOVAN KING,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
John A. Dean, Jr., District Judge

Gary K. King, Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Acting Chief Public Defender
Sergio J. Viscoli, Assistant Appellate Defender
Albuquerque, NM

for Appellee

## OPINION

CHÁVEZ, Justice.

{1}     Donovan King, suspected of aggravated battery, sat slumped over in a chair located in an interrogation room at the Farmington Police Department.  His interrogator, Detective Paul Martinez, advised King of his rights consistent with *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), and asked if he understood his rights.  King replied, "Yeah."  Detective Martinez next asked him, "Do you wish to answer any questions?"  King answered, "Not at the moment.  Kind of intoxicated."  After telling King that intoxication was not a reason that King could not talk to him, Detective Martinez placed a waiver of rights form in front of King, tossed a pen in King's direction, and said, "Sign this for me if you wish to answer

1

questions," indicating where King should sign. King responded, "If I wish to answer questions? Like I said[,] not at the moment." Undeterred, Detective Martinez repeated that intoxication was not a reason for not giving a statement, persisted in questioning King, and eventually elicited an incriminating statement from him.

**{2}**     The district court granted King's motion to suppress the statement because King had twice unambiguously invoked his Fifth Amendment right to remain silent when he told Detective Martinez that he did not want to answer questions at the moment. Because King was ultimately charged with an open count of first degree murder, the State appealed the district court's ruling to this Court. *See* NMSA 1978, § 39-3-3(B)(2) (1972) (permitting appeal by the state to the Supreme Court of decisions and orders suppressing evidence); *State v. Smallwood*, 2007-NMSC-005, ¶ 11, 141 N.M. 178, 152 P.3d 821 (holding that this Court has jurisdiction over interlocutory appeals in cases in which a criminal defendant may be sentenced to life imprisonment). We affirm the district court.

## KING UNEQUIVOCALLY INVOKED HIS RIGHT TO REMAIN SILENT

**{3}**     In *Miranda*, the United States Supreme Court articulated a warning that law enforcement must give to a suspect before the suspect can be subjected to a custodial interrogation without compromising the suspect's privilege against self-incrimination. 384 U.S. at 478-79. The Court explained:

> [The suspect] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479. "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473-74.

**{4}**     It is uncontested in this case that King was a suspect who was being subjected to a custodial interrogation and that he was advised of his *Miranda* rights. The dispositive issue is whether King's statements that he did not want to answer questions "at the moment" were sufficient to invoke his constitutional right to remain silent, mandating that the interrogation cease. In addressing this issue, we defer to the district court's findings as long as the findings are supported by substantial evidence, and we review de novo the district court's application of the law to those facts. *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579.

**{5}**     A hearing was held on King's motion to suppress on December 8, 2011. Detective Martinez testified at the hearing, and the video recording and transcript of Detective Martinez's interrogation of King were admitted as State's Exhibits A and B, respectively.

The district court made detailed and comprehensive findings of fact and conclusions of law. It entered an order on December 27, 2011, granting the motion to suppress. The district court made the following relevant findings:

1. At the time of the interview that is the subject of the motion, the Defendant was in custody for *Miranda* purposes and was under interrogation by the Detective.

2. At the outset of the interrogation when the Detective explained the Defendant's *Miranda* rights, the Defendant appears on the DVD to be physically affected by the alcohol and marijuana he testified to having consumed during the hours prior to the custodial interrogation. However, it is clear that the Defendant's mentation was rational and lucid. He was able to readily recite his date of birth, age, post office box and physical address. His remarks and questions were logical and appropriate to the situation.

3. The DVD and Appendix A, pg. 2[,] statements 7 through 14, reveal the following exchange.

> Detective: All right. [King], listen to me. You have the right to remain silent. Listen to me—look at me bro! You have the right to remain silent. Anything you say may be used against you. You have a right to a lawyer. If you cannot afford a lawyer one will be provided free. Do you understand your rights?
>
> [King]: Yeah[.]
>
> Detective: Do you wish to answer any questions?
>
> [King]: Not at the moment. Kind of intoxicated.
>
> Detective: Well[,] intoxication isn't one of the reasons you can't talk to us. It's uh . . .
>
> [King]: It's what?
>
> Detective: Three o'clock. Sign this for me if you wish to answer questions. Right there.
>
> [King]: If I wish to answer questions? Like I said[,] not at the moment.

4. As the Detective said "sign this for me," he placed the waiver of rights form across the table in front of [King], tossed a pen and marked the

3

signature line.  [King] did not sign.

. . .

> 7.  In one form or another, the Detective told [King] to sign the form six times before [King] actually signed the waiver of rights form.

**{6}**      Based on these findings, the district court concluded that (1) King had unambiguously invoked his right to remain silent; (2) King did not have to supply a reason for invoking his right to remain silent; and (3) the detective did not scrupulously honor King's right to remain silent and terminate the interrogation.  The transcript and the video recording of the interrogation adequately support the district court's findings of fact.  We next determine whether the district court correctly applied the facts to the law.

**{7}**      The legal analysis begins with the following passage from *Miranda*:

> Once warnings have been given, the subsequent procedure is clear.  If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.  At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.  Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

384 U.S. at 473-74 (footnote omitted).

**{8}**      However, the broad statement, "[i]f the individual indicates in any manner," *id.* at 473, has been clarified to mean that a suspect must make an unambiguous statement invoking the right to remain silent.  *Berghuis v. Thompkins*, ___ U.S. ___, ___, 130 S. Ct. 2250, 2260 (2010).  The moment that the unambiguous statement is made, the interrogator must "scrupulously honor" the suspect's or person's right by ceasing the interrogation.  *See Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (internal quotation marks and citation omitted).  The interrogator is not at liberty to refuse to discontinue the interrogation or to persist in repeated efforts to wear down the suspect so as to cause the suspect to change his or her mind.  *Id*. at 105-06.

**{9}**      The State contends that King's statement that he did not want to answer questions "at the moment" was equivocal and implied that King would answer questions at some point later in time, perhaps when he no longer felt intoxicated. King contends that his refusal to answer questions "at the moment" required the police to stop the interrogation.  We agree with King.

**{10}** King clearly invoked his right to remain silent. There is nothing ambiguous about his statement, which made it clear that he did not want to speak with the police. The adverb "not" is unequivocally a negative expression. In addition to this plain statement, King also refused to sign the waiver of rights form. It is obvious that Detective Martinez himself understood that King did not want to answer questions. Detective Martinez acknowledged as much when he told King that intoxication was not a reason that King could not talk to him. The State argues that "Detective Martinez did not lie to [King] when he told him that 'intoxication was not a reason for not speaking.'" However, the State does not cite any authority for the proposition that a person subjected to a custodial interrogation must state a reason for his or her choice to invoke their constitutional rights, and we have found none. Thus, we presume that no such authority exists. *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031; *McNeill v. Rice Eng'g & Operating, Inc.*, 2010-NMSC-015, ¶ 11, 148 N.M. 16, 229 P.3d 489 ("Where [a party has] failed to cite any contrary authority from this or any other jurisdiction, this Court will presume that no such authority exists."). The district court was correct in concluding that a person who invokes the right to remain silent does not have to offer a reason for invoking the right. All that is required is an unambiguous statement invoking the right to remain silent so that the interrogator is not left to guess whether the right was invoked. *Berghuis*, ___ U.S. at ___, 130 S. Ct. at 2260. We are left with the inescapable conclusion that Detective Martinez did not have to guess what King meant, and the detective knew that King did not want to answer questions, as further evidenced by the detective's efforts to get King to change his mind and sign the form waiving his rights.

**{11}** Although King's statement suggested that he might want to talk at a later time, there was absolutely no respite from the interrogation in this case. After King declined to sign the waiver of rights form and repeated that he did not want to talk "at the moment," Detective Martinez immediately launched into a lecture about how intoxication is not one of the reasons for refusing to talk to the police. Detective Martinez reprimanded King, telling him that the interrogation was "pretty important," King could not possibly think that the detectives were messing around, and King should be "scared sober." This lecture was followed by more questioning and several requests for King to sign the waiver of rights form.

**{12}** This is a case in which the interrogator failed to honor a decision by a person in custody to cut off questioning, by both refusing to discontinue the interrogation and by persisting in repeated efforts to wear the suspect down and cause him to change his mind. This, the Fifth Amendment does not tolerate. "The requirement that law enforcement authorities must respect a person's exercise of [the right to remain silent] counteracts the coercive pressures of the custodial setting." *Mosley*, 423 U.S. at 104. Detective Martinez's failure to scrupulously honor King's exercise of his right to remain silent is inconsistent with any notion of a voluntary relinquishment of the right to remain silent. Detective Martinez's actions are conclusive evidence that King's subsequent relinquishment of his right to remain silent was forced upon him by the continued interrogation, and therefore it was not a voluntary relinquishment.

5

**CONCLUSION**

**{13}**     The district court's grant of King's motion to suppress is affirmed because King unambiguously invoked his right to remain silent and law enforcement did not scrupulously honor his right to remain silent by immediately ceasing the interrogation.

**{14}     IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**

**Topic Index for _State v. King_, No. 33,395**

**CONSTITUTIONAL LAW**
Miranda Warnings
Self-Incrimination

**CRIMINAL LAW**
Intoxication
Murder

**CRIMINAL PROCEDURE**
Miranda Warning
Self-Incrimination
Waiver of Rights