OPINION KENNEDY, Chief Judge. {1} In this case of first impression, we hold that a kinship guardian (Guardian), under the Kinship Guardianship Act (the KGA), NMSA 1978, §§ 40-10B-1 to -15 (2001), who is named as a respondent in the abuse and neglect proceeding, is a necessary and indispensable party in the abuse and neglect case and may not be involuntarily dismissed from the case without first revoking the kinship guardianship according to the procedures specified in the KGA. {2} Because Guardian was a necessary and indispensable party in the abuse and neglect case by virtue of her legal status as a kinship guardian and because her status as Guardian was not terminated under the KGA, the district court erred in dismissing Guardian from the case over her objection. Therefore, the order dismissing Guardian and all subsequent orders entered without notice to her must be reversed. I. BACKGROUND {3} No documents establishing the kinship guardianship and its scope were presented to the district court or for our review on appeal. Nevertheless, it is undisputed that, in a separate proceeding in 2007, Guardian was appointed as kinship guardian of M. and A. (Children) pursuant to the KGA, and Children lived with Guardian, their maternal aunt, at least since that time. {4} In June 2010, Children, Youth and Families Department (CYFD) took custody of Children and filed a neglect/abuse petition against mother, father, stepfather, and Guardian pursuant to the Abuse and Neglect Act (the Act), NMSA 1978, §§ 32A-4-24 (2009) and -28 (2005). At the first adjudicatory hearing, CYFD proposed reunification of Children with Guardian. The district court ordered a treatment plan that focused on Guardian. Reunification with Guardian remained the goal of the proceeding in orders following the first judicial review on November2,2010, the second judicial review on February 3, 2011, and two permanency hearings in May 2010 and August 2011. The district court adopted CYFD’s reunification plan at a subsequent permanency hearing on August 9, 2011, under NMSA 1978, Section 32A-4-25.1 (2009), and Children began to transition back to living with Guardian. Guardian continued with the treatment plan. {5} Approximately six months later, on February 16, 2012, CYFD filed a motion to dismiss Guardian from the proceedings, stating that it was changing its permanency plan for Children from reunification with Guardian to adoption and would pursue termination of parental rights. CYFD alleged that, since Guardian is not Children’s parent with no parental rights to terminate, she was not an appropriate party to the termination of parental rights proceedings. CYFD further asserted that “[p]er CYFD policy,” Guardian was not eligible to adopt children or for foster placement.[1] The district court approved CYFD’s proposed change to the permanency plan in its order filed on April 17, 2012. {6} Guardian opposed CYFD’s motion to dismiss her from the case. At the subsequent evidentiary hearing on the motion to dismiss Guardian, the district court assumed that without any evidence before it, the kinship guardianship was “temporary” and determined that “it does not divest the parents of . . . rights, [and] it does not vest parental rights in that individual who has been granted temporary kinship guardianship.” Months later, on July 2, 2012, the district court granted the motion to dismiss Guardian in an order devoid of findings of fact or conclusions of law. This appeal followed. {7} The record shows that CYFD then filed a motion to terminate the parental rights of Children’s natural parents, and a motion for open adoption mediation on July 26, 2012, three weeks after Guardian was dismissed. Although the motion for adoption lists Guardian as a respondent, there is no record that she was served with either the motion for adoption or a copy of the notice of hearing on the motion to terminate parental rights set for September 2012. II. DISCUSSION {8} Guardian’s appeal is based on two arguments. First, Guardian maintains that she could not be dismissed from the abuse and neglect proceedings until her kinship guardianship was terminated pursuant to the Act or revoked pursuant to procedures set forth in the KGA. Second, as Children’s kinship guardian, Guardian insists she should be afforded the same or similar due process rights as a biological parent which, in Guardian’s view, meant that she could not be dismissed from the abuse and neglect proceedings without first terminating her rights or revoking her kinship guardianship. {9} We first- note that the Act explicitly provides for terminating parental rights, but not kinship guardianships. Section 32A-4-28; NMSA 1978, § 3.2A-4-29 (2009). Consequently, we hold that, because Guardian’s kinship guardianship cannot be terminated under the Act, and it had not been revoked pursuant to the KGA, Guardian’s status has not been terminated. As such, it was error for the district court to dismiss Guardian from the abuse and neglect case. Because we reverse on this premise, we do not address the due process argument. A. Guardian Possessed Statutory Rights {10} Guardian’s argument on appeal requires us to interpret the applicable statutes under the KGA and the Act. Accordingly, our review is de novo. State ex rel. Children, Youth & Families Dep’t v. Marlene C., 2011-NMSC-005, ¶ 14, 149 N.M. 315, 248 P.3d 863. The statute or statutes, whose construction is in question, are to “be read in connection with other statutes concerning the same subject matter}.]” Quantum Corp. v. State Taxation & Revenue Dep’t, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848. {11} “The [KGA] is intended to address those cases where a parent has left a child or children in the care of another for ninety consecutive days and that arrangement leaves the child or children without appropriate care, guidance[,] or supervision.” Section 40-10B-2(B). Thus, the purposes of the KGA are to: (1) establish procedures to effect a legal relationship between a child and a kinship caregiver when the child is not residing with either parent; and (2) provide a child with a stable and consistent relationship with a kinship caregiver that will enable the child to develop physically, mentally[,] and emotionally to the maximum extent possible when the child’s parents are not willing or able to do so. Section 40-10B-2(C). In keeping with its purpose, the KGA provides that “[a] guardian appointed for a child pursuant to the [KGA] . . . has the legal rights and duties of a parent except the right to consent to adoption of the child and except for parental rights and duties that the court orders retained by a parent.” Section 40-10B-13(A) (emphasis added). {12} Turning to the Act, it is clear that a kinship guardian may be made a party to an abuse and neglect proceeding in the same manner as a parent. NMSA 1978, § 32A-4-3(B) (2005). Guardians then progress through the case in the same manner as parents. NMSA 1978, § 32A-4-2 (2009) (definitions); NMSA 1978, § 32A-4-6 (2009) (including “guardians” when discussing taking children into custody); NMSA 1978, § 32A-4-7(A) (2009) (release from custody); NMSA 1978, § 32A-4-22(A)(5), (B)(1), (D) (2009) (dispositional hearings); NMSA 1978, § 32A-4-25(H)(7) (2009) (treatmentplans); § 32A-4-25.1(E) (permanency placement). These sections are all concerned with determining whether the child was abused or neglected by his or her caretaker and whether CYFD can reunify the family. However, the Act drops the term “guardian” when dealing with termination of parental rights. Section 32A-4-28; Section 32A-4-29 (mentioning only parents). We presume the term “guardian” was dropped because guardians are not parents, and there are separate, specific statutes for terminating a guardian’s rights. {13} A kinship guardian has the statutory “legal rights and duties of a parent except the right to consent to adoption” or any “rights and duties that the court orders retained by a parent.” Section 40-10B-13(A). A kinship guardian is therefore entitled to the statutory benefits of the Act, including the right that “[Reasonable efforts shall be made to preserve and reunify the family, with the paramount concern being the child’s health and safety.” Section 32A-4-22(C). Because a kinship guardian may have custody of a child taken away and returned through the Act in the same way as a parent and because of the kinship guardian’s legal status, the kinship guardian has the same right as a parent to be a party in a proceeding to terminate parental rights and to advocate or object to the termination of parental rights based on the best interest of the child until the kinship guardianship is properly terminated. See § 40-10B-13. In this case, the district court disregarded Guardian’s legal relationship with Children. The record shows the district court assumed that, without any evidence before it, the kinship guardianship was “temporary” and concluded that “it does not divest the parents of parental rights, [and] it does not vest parental rights in that individual who has been granted temporary kinship guardianship.” While this may be true as to parental rights, Guardian was vested with clearly delineated statutory rights that were not terminated by the Act. The district court erred in concluding that because CYFD had custody of Children and Guardian had no parental rights, she could be dismissed from the case. Its conclusion as to the guardianship’s “temporary” nature is not supported by either evidence or the KGA. {14} The district court recognized that it could not terminate a kinship guardianship that was ordered by another district court judge. The dissent does not presume to create such an ability for the children’s court either. Section 40-1 OB-14 specifically provides that “[t]he court appointing a guardian pursuant to the [KGA] . . . retains continuing jurisdiction of the matter.” One district court judge cannot set aside the order of another district court judge. N.M. Const, art. VI, §'13 (providing that a district court may not issue an order to a judge or court of equal or superior jurisdiction). If Guardian was somehow unfit to continue, the KGA termination procedure was the sole available route to end her status. {15} Without termination, the kinship guardianship continued. Without evidence of any limitations or revocations regarding the kinship guardianship, the district, court’s assumption that any existed was unfounded. CYFD filed its motion to dismiss Guardian and changed the permanency plan to adoption on February 16, 2012. The district court entered a permanency hearing order changing the permanency plan from reunification to adoption on April 17, 2012. Guardian was dismissed from the case on July 2, 2012, and the order of dismissal references hearings in March and May 2012. We presume that CYFD was capable of moving to revoke the kinship guardianship under the KGA when it first took custody of Children two years previously, up to and including when it changed its plan to termination of parental rights and adoption of Children. Section 40-10B-12(A), (B) (establishing the basis upon which kinship guardianships might be terminated). CYFD failed to do so, and the district court specifically declined to alter Guardian’s status under the KGA. Throughout all this time, Guardian remained a kinship guardian to Children and an indispensable and necessary party to the proceedings. The dissent promotes an ad hoc and unauthorized resolution. Here, CYFD bears responsibility for the delay. If the best interests of Children are not met by Guardian, early attention to the KGA is requisite, both for the abuse and neglect case and, as we note below, with regard to later adoption proceedings. B. Failure to Terminate Kinship Guardianship Prevents Adoption {16} By the court’s order of April 17, 2012, directing that the permanency plan for Children change to adoption, Guardian remained a necessary and indispensable party. An adoption cannot take place while the kinship guardianship still exists. A petition for adoption must allege “the existence of any court orders, including placement orders, that are known to the petitioner and that regulate custody, visitation},] or access to the adoptee, copies of which shall accompany and be attached to the petition as exhibits}.]” NMSA 1978, § 32A-5-26(G) (2003). Moreover, the petition must be served upon “the legally appointed custodian or guardian of the adoptee” unless service “has been previously waived in writing}.]” NMSA 1978, § 32A-5-27(A)(4) (2001). The notice shall state that the person served shall respond to the petition within twenty days if the person intends to contest the adoption and shall state that the failure to so respond shall be treated as a default and the person’s consent to the adoption shall not be required. Section 32A-5-27(E). The response must allege: (1) the existence of any court orders known to the respondent that regulate custody, visitation},] or access to the adoptee but have not been filed with the court at the time the response is filed and copies of which shall be attached to the response; (2) the relationship, if any, of the respondent to the adoptee[.] NMSA 1978, § 32A-5-28(B) (1993). So long as Guardian’s kinship guardianship was not terminated, she was a necessary and indispensable party to the pending adoption proceeding. Absent termination of the kinship guardianship, we conclude that these statutes give Guardian a right to be heard about whether adoption is in the best interest of Children. {17} We conclude that termination of the kinship guardianship must be one of the prerequisites to a valid adoption because of the guardian’s legal relationship to the child. A central purpose of the KGA is “to effect a legal relationship between a child and a kinship caregiver.” Section 40-10B-2(C)(l). The KGA then explicitly states what the relationship is — a guardian appointed by the district court pursuant to the KGA who has the legal rights and duties of a parent with exceptions that are not applicable here. Since the result of an adoption is the creation of the legal relationship of parent and child, NMSA 1978, § 32A-5-37(B) (2005), any existing kinship guardianship relation with children must necessarily be terminated before the adoption can be completed. Hence, the proscription that an adoption can only be granted if “all necessary consents, relinquishments, terminations},] or waivers have been obtained}.]” NMSA 1978, § 32A-5-36(F)(3) (2003). {18} Even if the adoption takes place under the authority of the Act, the foregoing requirements must be satisfied. Section 32A-4-28(F) states, in part: If the court finds that parental rights should be terminated; that the requirements for the adoption of a child have been satisfied; that the prospective adoptive parent is a party to the action; and that good cause exists to waive the filing of a separate petition for adoption, the court may proceed to grant adoption of the child, absent an appeal of the termination of parental rights. (Emphasis added.) Thus, we conclude that, because the permanency plan included a proposed adoption, Guardian remained a necessary and indispensable party to the abuse and neglect case, so long as her kinship guardianship remained in effect. Termination of a kinship guardianship under the KGA is equally necessary as termination of parental rights under the Act. Under the existing statutory scheme, the kinship guardianship must be terminated in accordance with the procedure set forth urSection 40-10B-12(B). The KGA is specific when it states that “}t]he court appointing a guardian pursuant to the [KGA] retains continuing jurisdiction of the matter.” Section 40-1 OB-14. The district court erred in this case when Guardian was involuntarily dismissed from the case without the kinship guardianship first being terminated as provided in the KG A. C. Due Process {19} Guardian’s second argument is that CYFD’s policy of not considering her as an adoptive or foster parent based on her plea of no contest at the abuse and neglect proceeding violates due process principles. As we are reversing on other grounds favorable to Guardian, we need not and do not consider this argument. III. CONCLUSION {20} The district court erred in dismissing Guardian from the proceedings while she remained the kinship guardian of Children because she was a necessary and indispensable party to the pending case. We therefore reverse the district court’s dismissal of her as a party respondent in the abuse and neglect act and reverse all subsequent orders entered in the case in proceedings that took place without notice first having been provided to Guardian. We remand this matter to the district court to reinstate Guardian as a party respondent in the matter and for further proceedings in accordance with law. See Chris & Christine L. v. Vanessa O., 2013-NMCA-107, 320 P.3d 16 (No. 32,193, Aug. 20, 2013) (holding that remand for a new tidal under abuse and neglect act might be required to correct deprivation of party’s rights). {21} IT IS SO ORDERED. RODERICK T. KENNEDY, Chief Judge I CONCUR: MICHAEL E. VIGIL, Judge JONATHAN B. SUTIN, Judge (dissenting) We note that this policy, though irrelevant to the proceedings at hand, was not asserted to bo based on any external authority.