# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date:  December 15, 2014

NO. 34,583

IN THE MATTER OF MAHDJID B.
and ALIAH B., children,

STATE OF NEW MEXICO, ex rel.
CHILDREN, YOUTH AND FAMILIES
DEPARTMENT,

   Petitioner-Petitioner,

v.

DJAMILA B.,

   Respondent-Respondent,

and

ABDEL M. B.,

   Intervenor.


ORIGINAL PROCEEDING ON CERTIORARI
John J. Romero, District Judge

New Mexico Children, Youth and Families Department
Charles E. Neelley, Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

for Petitioner


Hinkle, Hensley, Shanor & Martin, L.L.P.
Julie Sakura
Santa Fe, NM

for Respondent


The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Intervenor

**OPINION**

**CHÁVEZ, Justice.**

{1}    Respondent Djamila B. (Guardian) was appointed by a family court as kinship guardian to Mahdjid and Aliah (Children). Petitioner Children, Youth and Families Department (CYFD) brought abuse and neglect proceedings in children's court against Guardian and Children's biological parents pursuant to the Abuse and Neglect Act (ANA), NMSA 1978, §§ 32A-4-1 to -34 (1993, as amended through 2009). Prior to seeking adoption for Children, CYFD filed a motion to dismiss Guardian from the abuse and neglect proceedings, arguing that Guardian was not an appropriate party to a termination of parental rights hearing because Guardian is not Children's biological parent. The children's court granted CYFD's motion to dismiss Guardian without revoking the kinship guardianship in accordance with the revocation procedures set forth under the Kinship Guardianship Act (KGA), NMSA 1978, §§ 40-10B-1 to -15 (2001). The Court of Appeals reversed the children's court ruling, holding that Guardian was a necessary and indispensable party to the abuse and neglect proceedings. *State ex rel. Children, Youth & Families Dep't v. Djamila B.* (*In re Mahdjid B.*), 2014-NMCA-045, ¶ 20, 322 P.3d 444. This Court granted certiorari review. *State v. Djamila B.*, 2014-NMCERT-004.

{2}    We affirm the Court of Appeals on different grounds. We hold that while

kinship guardians are not necessary and indispensable parties to abuse and neglect proceedings, kinship guardians, nonetheless, have a statutory right to a revocation hearing in accordance with the revocation procedures of the KGA prior to being dismissed from abuse and neglect proceedings. Such procedures require an evidentiary hearing and compliance with the Rules of Evidence. There is no need for separate filings and hearings in the original family court that appointed the kinship guardian because the children's court presiding over the abuse and neglect proceeding has jurisdiction over the kinship guardian and the subject matter of the case to make decisions that are ultimately in the best interests of the children.

{3}     Children's biological father (Father) intervened in this appeal after this Court granted certiorari. Father argues that his due process rights were violated because he was not given a fair opportunity to voice concerns in the dismissal of Guardian from the abuse and neglect proceedings. Although we briefly discuss Father's claim, we do not decide this issue because it is unnecessary in view of our holding on the primary issue. If CYFD continues to believe that a revocation hearing is warranted, Father will have the opportunity to participate in Guardian's revocation hearing.

**I.      BACKGROUND**

{4}     Guardian, who is Children's paternal aunt, became Children's kinship guardian

2

pursuant to the KGA in May 2007 through a separate proceeding in family court. Children lived with Guardian from that time until June 2010, when Children were placed in CYFD's custody.

{5} In June 2010, CYFD filed an abuse and neglect petition in children's court against Children's mother, Father, and Guardian pursuant to the ANA. On June 30, 2010, the children's court issued a notice of custody hearing set for July 8, 2010. The children's court ordered a treatment plan requiring Guardian to submit to psychological and/or psychiatric evaluations, domestic violence and substance abuse assessments, and random drug testing as directed by CYFD. CYFD's initial assessment plan, which was attached to the children's court order, proposed permanent reunification of Children with Guardian by July 2, 2010. Reunification with Guardian remained the goal of the proceedings in orders following the first judicial review on November 2, 2010, the second judicial review on February 3, 2011, and two permanency hearings on May 10, 2011 and August 9, 2011. On August 9, 2011, the children's court adopted CYFD's proposed reunification plan pursuant to Sections 32A-4-24 and 32A-4-25.1, and Children were scheduled for a trial home visit to transition back to living with Guardian beginning on August 12, 2011 as Guardian continued with her treatment plan.

3

{6}     On February 16, 2012, CYFD filed a motion to dismiss Guardian from the abuse and neglect proceedings. At a permanency hearing on February 28, 2012, CYFD changed its permanency plan for Children from reunification with Guardian to adoption. CYFD's motion to dismiss also announced its intent to pursue termination of the parental rights of Children's biological parents. CYFD argued, in part, that it was "filing a motion for Termination of Parental Rights and [Guardian] does not have parental rights to terminate and will not benefit from following a treatment plan and whether she follows a treatment plan does not affect final permanency for the children." Furthermore, without reference to any external authority that would support the requirement of "[p]er CYFD policy," CYFD asserted that Guardian was not eligible either to adopt Children or to be a foster placement for them. In an order filed on April 17, 2012, the children's court adopted CYFD's proposed changes to the permanency plan. Guardian timely opposed CYFD's motion to dismiss her from the case.

{7}     On May 8, 2012, the children's court held an evidentiary hearing on CYFD's motion to dismiss. Prior to commencing the hearing, the children's court addressed preliminary matters with the parties and ruled that "[t]he formal rules of evidence [would] not apply" during the hearing. The children's court explained that the formal

4

rules of evidence do not apply during abuse and neglect proceedings except for adjudicatory or termination of parental rights hearings. The children's court also advised the parties that it would instead "weigh[] and balance[]" all of the evidence presented to "see whether the motion [to dismiss] should or should not be granted."

{8}     After hearing all of the evidence presented during the May 8, 2012 hearing, the children's court granted CYFD's motion to dismiss. The children's court briefly addressed the issue of the ongoing kinship guardianship, but it ultimately ruled that the children's court lacked jurisdiction to revoke a kinship guardianship appointed by a family court. The children's court also ruled that a kinship guardianship is "always a temporary status," and that Guardian was not Children's legal parent. Specifically, the children's court expressed its opinion that the appointment of a kinship guardian does not divest the rights of the biological parents, and thus it cannot vest Guardian with full parental rights. The children's court ultimately ruled that CYFD had custody of Children, and because Guardian was not a legal parent, CYFD had complete discretion regarding Children's placement.

{9}     On July 2, 2012, the children's court granted CYFD's motion to dismiss Guardian in an order devoid of findings of fact or conclusions of law. Guardian timely appealed the children's court order dismissing her from the abuse and neglect

proceedings. In her docketing statement, Guardian argued, inter alia, that dismissal from the abuse and neglect proceedings was improper until her kinship guardianship rights were revoked pursuant to the KGA.

{10} The Court of Appeals held that "[t]he [children's] court erred in dismissing Guardian from the proceedings while she remained the kinship guardian of Children because she was a necessary and indispensable party to the pending case." *Djamila B.*, 2014-NMCA-045, ¶ 20. The Court of Appeals reversed the children's court order dismissing Guardian and "all subsequent orders entered in the case in proceedings that took place without notice first having been provided to Guardian" and remanded the case "to the district court to reinstate Guardian as a party respondent in the matter and for further proceedings in accordance with law." *Id.*

{11} CYFD appealed to this Court, and we granted certiorari review. 2014-NMCERT-004. Father intervened in this appeal after this Court granted certiorari review.

## II. DISCUSSION

**A. Kinship guardians shall not be involuntarily dismissed from abuse and neglect proceedings unless the kinship guardianship is first properly revoked in accordance with the revocation procedures of the KGA and the New Mexico Rules of Evidence**

{12} CYFD argues that the Court of Appeals erred in concluding that Guardian was a necessary and indispensable party to the abuse and neglect proceedings, and therefore she could not be dismissed from the abuse and neglect proceedings until her kinship guardianship was first properly revoked pursuant to the KGA. Resolving this issue requires a survey of the interrelationship between two groups of statutes, the ANA and the KGA. "Statutory interpretation is a question of law, which we review de novo." *Bank of New York v. Romero*, 2014-NMSC-007, ¶ 40, 320 P.3d 1.

**1.** ***The Legislature enacted the ANA and the KGA with the intent to preserve family unity***

**a. The ANA**

{13} The New Mexico Children's Code, NMSA 1978, §§ 32A-1-1 to -24-5 (1993, as amended through 2009), incorporates the ANA and qualifies ANA policy and procedure. The central purpose of the Children's Code is to protect the health and safety of children covered by its provisions while "preserv[ing] the unity of the family whenever possible." Section 32A-1-3(A). To achieve these goals, the ANA "details the procedures and timelines the State must follow when it invokes the jurisdiction of the district court to take physical and/or legal custody of a child whom it alleges to be abandoned, neglected, or abused." *State ex rel. Children, Youth & Families*

*Dep't v. Maria C. (In re Rudolfo L.*), 2004-NMCA-083, ¶ 18, 136 N.M. 53, 94 P.3d 796. The ANA procedures serve the express purpose of the Children's Code by "assur[ing] that 'the parties [receive] a fair hearing and their constitutional and other legal rights are recognized and enforced.' " *Id*. ¶ 23 (second alteration in original) (quoting Section 32A-1-3(B)). Accordingly, the ANA guarantees the child's parent, guardian, or custodian notice and participation in proceedings prior to the termination of parental rights. Sections 32A-18 to -20, -22, -25, -25.1.

{14}     An abuse and neglect case begins when CYFD files a petition alleging abuse or neglect. *See* § 32A-4-7(D) ("Reasonable efforts shall be made to prevent or eliminate the need for removing the child from the child's home, with the paramount concern being the child's health and safety. In all cases when a child is taken into custody, the child shall be released to the child's parent, guardian or custodian, *unless* [*CYFD*] *files a petition within two days from the date that the child was taken into custody*." (emphasis added)). Upon the filing of a petition, "counsel shall be appointed for the parent, guardian or custodian of the child." Section 32A-4-10(B). Within ten days of filing, the children's court holds a custody hearing to determine whether the child should remain in CYFD custody or whether CYFD should return legal custody to the child's parent, guardian, or custodian pending an adjudicatory

hearing. Section 32A-4-18(A), (C). The children's court shall return legal custody to the child's parent, guardian, or custodian unless it finds probable cause for abuse or neglect. Section 32A-4-18(C).

{15} An adjudicatory hearing is held within sixty days from when CYFD serves the abuse and neglect petition. Section 32A-4-19(A). The adjudicatory hearing focuses on whether the child was abused or neglected as defined under the ANA. Sections 32A-4-2, -20(H). The children's court determines whether the child was abused or neglected based on a valid admission from the parties or on clear and convincing evidence. *Id.* If the children's court finds abuse or neglect, the court may address disposition immediately or hold a dispositional hearing within thirty days after the adjudicatory hearing where it hears evidence and determines the best interests of the child as to the child's custody. Section 32A-4-20(H), -22(A). Additionally, if the children's court finds the child to be abused and/or neglected, "the court shall also order [CYFD] to implement and the child's parent, *guardian* or custodian to cooperate with any treatment plan approved by the court." Section 32A-4-22(C) (emphasis added). Within sixty days of disposition, the children's court holds an initial judicial review hearing to determine the effectiveness of the treatment plan. Section 32A-4-25(A).

9

{16}     Within six months of the initial judicial review of the dispositional order, the children's court holds an initial permanency hearing to determine whether the child should be returned home to the child's parent, guardian, or custodian or remain in CYFD's custody. Section 32A-4-25.1(A), (B).

> At the conclusion of the permanency hearing, the [children's] court shall order one of the following permanency plans for the child:
>
> (1)     reunification;
>
> (2)     placement for adoption after the parents' rights have been relinquished or terminated or after a motion has been filed to terminate parental rights;
>
> (3)     placement with a person who will be the child's permanent guardian;
>
> (4)     placement in the legal custody of [CYFD] with the child placed in the home of a fit and willing relative; or
>
> (5)     placement in the legal custody of [CYFD] under a planned permanent living arrangement, provided that there is substantial evidence that none of the above plans is appropriate for the child.

Section 32A-4-25.1(B).

{17}     "If the court adopts a permanency plan of reunification, the court shall adopt a plan for transitioning the child home and schedule a permanency review hearing within three months" to ensure that the child's parent, guardian, or custodian has

10

made good progress. Section 32A-4-25.1(C). "At the permanency review hearing, all parties and the child's guardian ad litem or attorney shall have the opportunity to present evidence and cross-examine witnesses." Section 32A-4-25.1(E). Notably, the Rules of Evidence do not apply in permanency review hearings. Section 32A-4-25.1(I); *see also* Rule 11-1101(D) NMRA ("These rules—except for those on privilege—do not apply to the following: . . . (3)(f) dispositional hearings in children's court proceedings, and (g) the following abuse and neglect proceedings: (i) issuing an ex parte custody order; (ii) custody hearings; (iii) permanency hearings; and (iv) judicial review proceedings."). If the child is returned home, the case can either be dismissed or the children's court can order continuing supervision. Section 32A-4-25.1(E)(2)-(3). At the permanency review hearing, if the children's court finds that reunification is still not possible, it will initiate proceedings for a permanent guardianship or termination of parental rights (adoption). *See* § 32A-4-31 (permanent guardianship); § 32A-4-28 (termination of parental rights).

{18}     Terminating parents' right to reunite with their child, thereby extinguishing the family unit, is a mechanism of last resort under the ANA. The ANA provides that a children's court shall terminate parental rights only when:

> (1)     there has been an abandonment of the child by [the child's]

parents;

(2)    the child has been a neglected or abused child as defined in the [ANA] and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by [CYFD] or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child. . . . [; or]

(3)    the child has been placed in the care of others, including care by other relatives, either by a court order or otherwise and the following conditions exist . . . .

Section 32A-4-28(B). CYFD or any of the other parties to the proceeding may file a motion to terminate parental rights at any time during abuse and neglect proceedings. Section 32A-4-29(A). However, "[t]he grounds for any attempted termination shall be proved by clear and convincing evidence." Section 32A-4-29(I). Unlike the ANA provisions for initial permanency reviews, adjudicatory hearings, or dispositional hearings prior to termination, the procedures for the termination of parental rights fail to mention guardians.

{19}    In summary, the ANA limits the procedures and time frame under which parents or custodians and, by extension, guardians can rehabilitate themselves and reunite with their children in line with the overall purpose of the Children's Code. *Maria C.*, 2004-NMCA-083, ¶¶ 18-22. While the ANA serves to protect children in

12

New Mexico against abuse and neglect, preserving the family relationship between the child and the child's parent, guardian, or custodian remains the ultimate goal of ANA proceedings until the children's court finds that reunification is simply not possible.

**b.    The KGA**

{20}    Similar to the overall purpose of the Children's Code, the KGA recognizes New Mexico policy that the "interests of children are best served when they are raised by their parents." Section 40-10B-2(A). However, when neither parent is able or willing to raise their child, the Legislature enacted the KGA in 2001 to establish procedures whereby "a child should be raised by family members or kinship caregivers." *Id.* The KGA applies to cases where a child has been left by the child's parents "in the care of another for ninety consecutive days [or more] and that arrangement leaves the child . . . without appropriate care, guidance or supervision." Section 40-10B-2(B).

{21}    Ultimately, "[t]he KGA establishes procedures and substantive standards for effecting legal relationships between children and adult caretakers who have assumed the day-to-day responsibilities of caring for a child." *Debbie L. v. Galadriel L.* (*In re Guardianship of Victoria R.*), 2009-NMCA-007, ¶ 4, 145 N.M. 500, 201 P.3d 169;

13

*see also* § 40-10B-2(C) ("The purposes of the Kinship Guardianship Act are to: (1) establish procedures to effect a legal relationship between a child and a kinship caregiver when the child is not residing with either parent; and (2) provide a child with a stable and consistent relationship with a kinship caregiver that will enable the child to develop physically, mentally and emotionally to the maximum extent possible when the child's parents are not willing or able to do so."). Kinship guardians possess all of "the legal rights and duties of a parent except the right to consent to adoption of the child and except for parental rights and duties that the court orders retained by a parent." Section 40-10B-13(A); *see also* § 40-10B-3(A) ("As used in the Kinship Guardianship Act[,] . . . 'caregiver' means an adult, who is not a parent of a child, with whom a child resides and who provides that child with the care, maintenance and supervision consistent with the duties and responsibilities of a parent of the child.").

{22}     A petition for kinship guardianship may be filed by a "kinship caregiver," Section 40-10B-5(A)(1), a designation that includes three categories of caregivers: (1) an adult relative, godparent, or member of the child's tribe or clan, Section 40-10B-3(A), (C); (2) "an adult with whom the child has a significant bond," *id.*; and (3) a guardian appointed directly by a court under the KGA, Sections 40-10B-7(A), -8(A). "Upon hearing, if the court finds that a qualified person seeks appointment, the

14

venue is proper, the required notices have been given, the requirements . . . of this section have been proved and the best interests of the minor will be served by the requested appointment, it shall make the appointment." Section 40-10B-8(A). A kinship guardian "has authority to make all decisions regarding visitation between a parent and the child" unless otherwise ordered by the court. Section 40-10B-13(B).

{23} A motion to revoke the kinship guardianship may be filed by any person. Section 40-10B-12(A). Because of the rights and interests involved, our Rules of Evidence apply in these kinship guardianship revocation proceedings. *See* Rule 11-101 NMRA (governing the scope of our Rules of Evidence); Rule 11-102 NMRA ("These rules should be construed so as to administer every proceeding fairly . . . and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."); Rule 11-1101 (governing the applicability of our Rules of Evidence and listing the specific exceptions to their applicability; notably, KGA revocation hearings are not a listed exception). To revoke the kinship guardianship, the moving party has the burden of showing that "a preponderance of the evidence proves a change in circumstances and the revocation is in the best interests of the child." Section 40-10B-12(B). A preponderance of the evidence makes it easier to return a child to his or her biological parents when the child's

15

biological parents are able and willing to care for the child. Through this lower burden of proof, the KGA provides the proper statutory mechanism for preserving the unity of family for New Mexico children without severely disrupting the important role of a parent for the child, regardless of whether that parental role is fulfilled by the child's biological parent or a kinship guardian. *See* § 40-10B-2(A) ("[W]henever possible, a child should be raised by family members or kinship caregivers.").

**2.      *The Legislature intended that kinship guardians participate in all abuse and neglect proceedings until the kinship guardianship is properly revoked in accordance with the revocation procedures of the KGA***

{24}      CYFD argues that the omission of guardians from the statutory provisions of the ANA concerning parental rights termination procedures precludes Guardian's ability to further participate in the abuse and neglect proceedings because Guardian lacks any parental rights to divest. However, the omission of the term "guardian" from the parental rights termination procedures in the ANA does not determine whether Guardian has a statutory right to participate in all abuse and neglect proceedings until her kinship guardianship is properly revoked. The Legislature enacted the Children's Code and the KGA to create mechanisms for elevating guardians to the status of a child's biological parents when the biological parents are unwilling or unable to properly care for the child. These statutory mechanisms

16

support the overall purpose of the Children's Code and the KGA concerning family unity. The KGA bestows parental rights on kinship guardians, which must be properly revoked prior to involuntarily dismissing kinship guardians from abuse and neglect proceedings or before appointing a permanent guardian other than the kinship guardian. *See* §§ 32A-4-25.1(B)(3), -31, -32. We hold that the Legislature intended that kinship guardians participate in all abuse and neglect proceedings until the kinship guardianship is first properly revoked in accordance with the revocation procedures of the KGA and our Rules of Evidence.

{25}    "Our principal goal in interpreting statutes is to give effect to the Legislature's intent." *Griego v. Oliver*, 2014-NMSC-003, ¶ 20, 316 P.3d 865. In interpreting statutory language, "[w]e look first to the plain language of the statute." *Freedom C. v. Brian D.* (*In re Guardianship of Patrick D.*), 2012-NMSC-017, ¶ 13, 280 P.3d 909 (alteration in original) (internal quotation marks and citation omitted). However, "we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Jolley v. Associated Elec. & Gas Ins. Servs. Ltd.*, 2010-NMSC-029, ¶ 8, 148 N.M. 436, 237 P.3d 738 (internal quotation marks and citation omitted). We analyze a "statute's function within a comprehensive legislative scheme." *State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d

17

939.

{26} The ANA, "as part of the Children's Code, . . . must be read as an entirety and each section interpreted so as to correlate as faultlessly as possible with all other sections." *State ex rel. Children, Youth & Families Dep't v. Benjamin O.* (*In re Lakota C.*), 2007-NMCA-070, ¶ 34, 141 N.M. 692, 160 P.3d 601 (internal quotation marks and citation omitted). "Additionally, the provisions of the Children's Code should be interpreted in such a manner as to effectuate its purposes, which include preservation of family unity when possible." *Id.* (internal quotation marks and citations omitted). " 'In other words, a statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter.' " *State ex rel. Children, Youth & Families Dep't v. Maurice H.* (*In re Grace H.*), 2014-NMSC-034, ¶ 34, 335 P.3d 746 (quoting *Rivera*, 2004-NMSC-001, ¶ 13 (internal quotation marks and citation omitted)). "Whenever possible, we must read different legislative enactments as harmonious instead of as contradicting one another." *Smith*, 2004-NMSC-032, ¶ 10 (internal quotation marks and citation omitted).

{27} The harmonious common purpose of the ANA and the KGA is to preserve family unity whenever possible. In line with this purpose, the ANA and the KGA both

elevate guardians to a level of responsibility synonymous with that of parents. The KGA, enacted to provide a mechanism for family members to legally step into the shoes of parents when a child's biological parents are unable or unwilling to care for that child, grants kinship guardians the same legal rights and responsibilities that a biological parent would have.

{28}     This Court rejects "a formalistic and mechanical statutory construction when the results would be absurd, unreasonable, or contrary to the spirit of the statute." *Smith*, 2004-NMSC-032, ¶ 10. Each provision defining the harms and neglect within the ANA includes the term "guardian" in addition to the terms "parent" and "custodian" as persons who are responsible for those harms. Section 32A-4-2(B)(1)-(5), (E)(1)-(4). Additionally, the term "guardian" appears in numerous other provisions of the ANA. *See, e.g.*, § 32A-4-2 (defining abuse and neglect by parties including guardians); § 32A-4-6(A) (describing conditions under which a child may be taken into custody, including when guardians commit certain acts); § 32A-4-7(A) (listing guardians as persons to whom CYFD may release children in CYFD's custody); § 32A-4-22(C) (requiring guardians to comply with court-ordered treatment plans implemented by CYFD); § 32A-4-25(H)(7) (empowering a court during periodic judicial review hearings to issue an order to show cause or to order

19

a hearing on the merits of a motion to terminate parental rights if a parent or guardian has not followed their treatment plan).

{29}    Pursuant to the ANA, a kinship guardian can be accused of abuse and neglect, § 32A-4-6(A), summoned to participate in all abuse and neglect proceedings, §§ 32A-4-10(B), -18(B)-(C), and ordered to follow a court-ordered permanency and treatment plan implemented by CYFD, § 32A-4-22(C). Prior to the termination hearing, CYFD and the children's court treated both Guardian and Children's biological parents alike. Guardian was the only party who made consistent efforts to comply with her court-ordered treatment plan. Most importantly, Guardian was Children's only parental figure for nearly three years between May 2007 and June 2010. Nonetheless, CYFD improperly maintains a rigid textual interpretation of the ANA precluding Guardian from further participating in the abuse and neglect proceedings. Precluding kinship guardians from participating in abuse and neglect termination of parental rights hearings, while ordering them to comply with CYFD's permanency plans for reunification with children, leads to a result that is either "absurd, unreasonable, or contrary to the spirit of the statute[s]." *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022; *see also Maria C.*, 2004-NMCA-083, ¶ 25 (recognizing that the process for terminating parental rights is a "continuum of proceedings" beginning

20

with the filing of the neglect or abuse petition).

{30} We recognize that the Legislature did not expressly include the term "guardian" within the ANA provisions concerning the termination of parental rights. However, the Legislature's omission is not dispositive of whether kinship guardians have a statutory right to a revocation hearing prior to being involuntarily dismissed from abuse and neglect proceedings. "The legislature is presumed to be aware of existing statutes when it enacts legislation." *State v. Fairbanks*, 2004-NMCA-005, ¶ 9, 134 N.M. 783, 82 P.3d 954. Accordingly, the Legislature is presumed to have been aware of both the ANA and the KGA. Because the Legislature intended that the ANA and the KGA work in harmony, the revocation procedures of the KGA naturally complement the ANA provisions concerning termination of parental rights. By enacting compatible legislation, the Legislature intended that courts presiding over abuse and neglect proceedings first hold a revocation hearing in accordance with KGA revocation procedures and our Rules of Evidence prior to involuntarily dismissing a kinship guardian from abuse and neglect proceedings.

{31} This interpretation allows children's courts to ensure that the ANA is applied in a manner which adheres to the spirit of the Children's Code and the KGA. Although the ANA fails to explicitly include the term "guardian" within its statutory

procedures for terminating parental rights, kinship guardians nonetheless possess rights equivalent to the parental rights being terminated by the children's court through abuse and neglect proceedings.

{32}     Cases that come under the ANA and the KGA often involve unconventional family structures and unconventional facts. *See In re Guardianship of Patrick D.*, 2012-NMSC-017, ¶¶ 1, 29 (court found both parents unfit to raise child; maternal grandparents granted guardianship); *In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶¶ 2, 12 (affirming the district court's award of guardianship to adult caregivers with whom the child formed a bond where father had limited contact with child, mother had emotional problems, and mother informally left the eighteen-month-old child with the adult caregivers, who raised the child for several years). The ANA and the KGA need to work in harmony to preserve family unity when children have unconventional family structures involving both biological parents and kinship guardians. It would undermine the spirit of both acts to allow a children's court to involuntarily dismiss kinship guardians from abuse and neglect proceedings merely based on a strict interpretation of the ANA focused on the omission of "guardian" from the ANA provisions concerning termination of parental rights. Such a result would be antithetical to the Legislature's intent in enacting both statutes.

22

{33} Consistent with legislative intent, we hold that kinship guardianships must be revoked in accordance with the revocation procedures of the KGA and our Rules of Evidence before involuntarily dismissing a kinship guardian from abuse and neglect proceedings. The KGA requires the party moving for revocation to prove that "a preponderance of the evidence proves a change in circumstances and the revocation is in the best interests of the child." Section 40-10B-12(B). If the court finds that the burden of proof has been met, the court shall grant the motion to revoke the guardianship and dismiss the kinship guardian from the abuse and neglect proceedings. Section 40-10B-12. The court shall also "(1) adopt a transition plan proposed by a party or the guardian ad litem; (2) propose and adopt its own transition plan; or (3) order the parties to develop a transition plan by consensus if they will agree to do so." Section 40-10B-12(B).

**3.** ***Family courts that appoint kinship guardians have concurrent jurisdiction with the children's court in overseeing a kinship guardianship revocation hearing during abuse and neglect proceedings***

{34} The KGA provides that "[t]he court appointing a guardian pursuant to the [KGA] retains continuing jurisdiction of the matter." Section 40-10B-14. The children's court in this case interpreted continuing jurisdiction to mean exclusive jurisdiction. Accordingly, the children's court ruled that it lacked jurisdiction to

23

revoke the kinship guardianship pursuant to Section 40-10B-14 of the KGA. We disagree. Such an interpretation is contrary to the plain text of the KGA and contrary to the functional purposes of the revocation provisions of both the KGA and abuse and neglect proceedings.

{35}   First, although the KGA provides for "continuing" jurisdiction, it does not grant exclusive jurisdiction to district courts that appoint kinship guardianships. *See* § 40-10B-4 ("The district court has jurisdiction of proceedings pursuant to the [KGA]. . . . Proceedings pursuant to the [KGA] shall be in the district court of the county of the child's legal residence or the county where the child resides, if different from the county of legal residence."); *see also* § 40-10B-14 ("The court appointing a guardian pursuant to the [KGA] retains continuing jurisdiction of the matter."). The continuing jurisdiction provision of the KGA differs from our child custody statutes, which explicitly necessitate "*exclusive*, continuing jurisdiction." NMSA 1978, § 40-10A-202 (2001) (emphasis added); *see also Elder v. Park*, 1986-NMCA-034, ¶ 17, 104 N.M. 163, 717 P.2d 1132 (recognizing that the primary purpose of the New Mexico Child Custody Jurisdiction Act, NMSA 1978, §§ 40-10-1 to -24 (1981, as amended through 1989), "is to avoid jurisdictional competition and conflict in making custody awards" and facilitate the "orderly resolution of child custody disputes

between parents located in different states" (repealed by 2001 Laws, ch. 114, § 404 and recodified in the Uniform Child-Custody Jurisdiction and Enforcement Act, NMSA 1978, §§ 40-10A-101 to -403 (2001))). A children's court holding a kinship guardianship revocation hearing during abuse and neglect proceedings does not give rise to concerns of competing judicial decrees. In situations such as this case, children's courts have jurisdiction over kinship guardians during abuse and neglect proceedings. The children's court is in a better position than the family court to evaluate the "change in circumstances and [whether] the revocation is in the best interests of the child." Section 40-10B-12(B).

{36}    Second, the Legislature enacted both the KGA and the Children's Code with the purpose of preserving family unity. In revoking a kinship guardianship, both family courts and children's courts have concurrent objectives in trying to preserve notions of family unity while effecting the child's best interests.

{37}    Consistent with legislative intent, we hold that family courts which appoint kinship guardianships have continuing concurrent jurisdiction over the kinship guardianship, with children's courts presiding over abuse and neglect proceedings. CYFD may petition to revoke the rights of a kinship guardian within those abuse and neglect proceedings. Our holding bridges the divide between the KGA and the ANA

25

and provides courts with symbiotic authority to make rulings that are ultimately in the child's best interests. After receiving a proper motion to revoke a kinship guardianship during abuse and neglect proceedings, the children's court may conduct a full evidentiary hearing in accordance with our Rules of Evidence and act according to the revocation procedures of the KGA to revoke the kinship guardianship if the burden of proof has been met. Once the kinship guardianship has been properly revoked, the kinship guardian shall be dismissed from further participation in the abuse and neglect proceedings.

**4.** ***Although we hold that kinship guardians have a statutory right to a revocation hearing prior to being dismissed from abuse and neglect proceedings, kinship guardians are not necessary and indispensable parties pursuant to Rule 1-019 NMRA***

{38} The Court of Appeals held that the children's court erred in dismissing Guardian because she was a necessary and indispensable party to the abuse and neglect proceedings until her kinship guardianship was revoked pursuant to the KGA. *Djamila B.*, 2014-NMCA-045, ¶ 20. The Court of Appeals reasoned that the KGA conveyed to Guardian the "legal rights and duties of a parent except the right to consent to adoption" or the "rights and duties that the court orders retained by a parent." *Id.* ¶ 13 (internal quotation marks citation omitted).

A kinship guardian is therefore entitled to the statutory benefits of the

26

[KGA], including the right that [r]easonable efforts shall be made to preserve and reunify the family, with the paramount concern being the child's health and safety. . . . [T]he kinship guardian has the same right as a parent to be a party in a proceeding to terminate parental rights and to advocate or object to the termination of parental rights based on the best interest of the child until the kinship guardianship is properly terminated.

*Id.* ¶ 13 (second alteration in original) (internal quotation marks and citation omitted).

{39} The legal concept of a necessary and indispensable party is set forth in Rule 1-019(B). However, Rule 1-019 is a rule of civil procedure that does not govern children's court cases concerning the Children's Code. *See* Rule 10-101(A)(1)(c) NMRA ("[T]he Children's Court Rules [of Procedure] govern procedure in the children's courts of New Mexico in all matters involving children alleged by the state . . . to be abused or neglected as defined in the [ANA] including proceedings to terminate parental rights which are filed pursuant to the [ANA]."). Rule 10-121(B)(2) NMRA provides that a guardian must be a party to the abuse and neglect proceedings. "In proceedings on petitions alleging neglect or abuse or a family in need of court-ordered services, the parties to the action are: . . . (2) a parent, guardian or custodian who has allegedly neglected or abused a child or is in need of court-ordered services." Rule 10-121(B). This rule does not state that the named parties are necessary and indispensable, and instead unambiguously directs that a guardian must

27

be a party to the action.

{40} This Court agrees with the outcome reached by the Court of Appeals on different grounds. Kinship guardians do have a statutory right to a revocation hearing pursuant to the KGA prior to being involuntarily dismissed from abuse and neglect proceedings. However, we hold that kinship guardians are not necessary and indispensable parties to ANA proceedings as defined by Rule 1-019. We clarify the holding of the Court of Appeals on this ground.

**B.    Father's due process rights were not violated during the hearings on the motion to dismiss Guardian from the abuse and neglect proceedings**

{41} Father filed a motion to intervene in this appeal after this Court granted certiorari. In his briefing, Father raised issues of procedural due process, arguing that he was not given a fair opportunity to voice concerns in the dismissal of Guardian from the abuse and neglect proceedings. Specifically, Father asks this Court to hold that "a natural parent's expressed wish for family reunification via the auspices of placement with a relative must be taken into account prior to dismissal of the relative from abuse and neglect proceedings." Father further argues that his fundamental liberty interests based in the Fourteenth Amendment allow him to influence placement decisions for Children. CYFD argues that Father's claim was not properly

28

preserved in the district court and cannot be raised for the first time on appeal. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked.").

{42} We usually review denial of due process rights de novo. *State ex rel. Children, Youth & Families Dep't v. Pamela R.D.G.* (*In re Pamela A.G.*), 2006-NMSC-019, ¶ 10, 139 N.M. 459, 134 P.3d 746. However, we do not issue a holding on this question because it is unnecessary due to our holding that Guardian is entitled to a revocation hearing prior to dismissal from the abuse and neglect proceedings.

{43} Father had various opportunities to meaningfully participate in the proceedings to dismiss Guardian from the abuse and neglect proceedings. At the February 28, 2012 hearing on permanency that resulted in the children's court's approval of a plan of adoption and that first considered the motion to dismiss Guardian, Father's counsel and Father were present. Father's attorney was excused from a subsequent hearing on the motion to dismiss on March 27, 2012 to work on other pleadings because Father would remain a party to the abuse and neglect proceedings, regardless of the outcome of the hearing on the motion to dismiss Guardian. Father and his counsel both attended but did not participate in the May 8, 2012 evidentiary hearing on the motion to dismiss Guardian from the abuse and neglect proceedings, and again they stated

no position on the motion to dismiss. Finally, Father did not intervene in the Court of Appeals action that preceded this appeal. As a result, CYFD argues that this Court lacks jurisdiction to consider the issue. *See* NMSA 1978, § 34-5-14 (1972) (providing that this Court has jurisdiction over original writs, decisions of the Court of Appeals, and actions certified to this Court by the Court of Appeals).

**{44}** The circumstances surrounding Father's lack of participation in Guardian's dismissal and this late intervention raise troubling questions. However, all of these questions are irrelevant given our holding that Guardian is entitled to a revocation hearing in accordance with the KGA and our Rules of Evidence prior to being involuntarily dismissed from the abuse and neglect proceedings. Because Father's rights had not been terminated as of the time of this appeal, he will have an opportunity to participate in any proceeding initiated to revoke Guardian's kinship guardianship status if he so chooses.

## III. CONCLUSION

**{45}** We reverse the children's court ruling to dismiss Guardian as contrary to law. We affirm the Court of Appeals on different grounds and hold that while kinship guardians are not necessary and indispensable parties to abuse and neglect proceedings, a kinship guardian is nonetheless entitled to a revocation hearing in

30

accordance with the KGA and our Rules of Evidence prior to dismissal from abuse and neglect proceedings. We remand this case to the children's court to conduct a revocation hearing if CYFD continues to believe that such a hearing is warranted.

{46} **IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

31